PRATT ROBERTS *et al.*

*v.*

MARTHA A. FLEMING *et al.*

1. TRUSTEE *purchasing at his own sale—effect on the rights of the mortgagor.* A trustee under a mortgage containing a power of sale, can not become a purchaser at his own sale, either directly, or indirectly by procuring another person to purchase for his benefit; and if he does so become the purchaser, the rights of the mortgagor will remain precisely the same as though no sale had been made.

2. SALE OF LAND EN MASSE, *under execution—lapse of time.* Where it is alleged that a sale of land under execution, was for an inadequate price, and without proper division, an application to set aside the sale on that ground must be made within a reasonable time. In this case, there was a delay of between seven and eight years, and, after such a lapse of time, the court declined to inquire whether the price bid was inadequate, or whether the sheriff should have sold the property in smaller quantities.

3. MORTGAGEE *purchasing in outstanding title.* A mortgagee may purchase in an outstanding title, or the equity of redemption, either from the mortgagor, or from a third person who has acquired it by grant, directly from him, or by a purchase under a judgment or decree which was a prior lien to his mortgage, and hold the title absolutely in his own right, where he has made no arrangement with the mortgagor, or any promise, or done any act which would preclude him from so doing. The mere relation of mortgagor and mortgagee will not preclude the latter from so acquiring the outstanding title.

4. A mortgagee, under a power in the mortgage, sold the property, but improperly became the purchaser himself, indirectly, through a third person. A part of the same property had been previously sold upon execution, under a prior judgment lien, and the time of redemption allowed to expire, so that the purchaser obtained a sheriff's deed. The mortgagee, after his sale under the mortgage, purchased in the title to the portion sold under execution, and as to that portion it was held, upon a bill filed to redeem, he had the title in fee, not subject to redemption by the mortgagor, or a junior mortgagee, or those claiming under them.

5. REDEMPTION FROM MORTGAGE—*by whom.* In a case where the right of redemption from a mortgage still existed, a junior mortgagee executed an agreement by which he agreed to sell and convey all his interest in the mortgaged premises for a certain sum, but payment was not to be made unless the right of the party purchasing, or his assigns, to redeem from the

senior mortgage, should be established. This agreement was assigned to the wife of the mortgagor. Then the mortgagor and his wife executed a quit claim deed for the premises, and the grantee therein released to the wife of the mortgagor: *Held*, the wife thereby became invested with the right to redeem from the senior mortgage.

6. PARTIES—*to a bill to redeem.* And upon bill filed for redemption, by the party so invested with the right to redeem, the junior mortgagee should be made a party, because the terms of the agreement, by which he transferred his interest, remained unexecuted, leaving equities to be settled between him and the party with whom he contracted. Had he executed a deed, he would not have been a necessary party.

7. PURCHASERS *pendente lite.* A purchaser of mortgaged premises from a mortgagee, pending a suit to redeem from the mortgage, will hold subject to. the equities of the parties seeking the redemption.

8. REDEMPTION *from mortgage—of the terms thereof.* A mortgagee, under a power in the mortgage, sold the premises, but improperly became the purchaser himself, in an indirect way. Subsequently, and while in possession, he purchased in the outstanding title to a portion of the mortgaged premises, which had been sold under a prior judgment lien. The mortgage bore date thirtieth July, 1858, and his sale was made December, 1860. In January, 1865, a bill was filed to redeem. Redemption was allowed on these terms: the mortgagee was allowed the amount of his mortgage debt, and interest, all taxes paid upon the lands, and all reasonable repairs, and, on account of the delay in filing the bill to redeem, he was allowed for necessary and permanent improvements, made prior to the filing of the bill. He was charged with the amount bid at the mortgage sale upon that portion of the lands to which he acquired the outstanding title, but not with the rents and profits thereof, nor was he allowed the amount he paid for such outstanding title. Upon the residue of the mortgaged premises, he was charged with the rents and profits received, or which might have been received by reasonable effort and proper management of the property.

WRIT of ERROR to the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This suit was commenced in the circuit court of Marshall county, and removed, on change of venue, into the circuit court of McLean county. The opinion of the court contains a sufficient statement of the case.

Messrs. KNOWLTON & JAMIESON, for the plaintiffs in error.

Messrs. BANGS & SHAW, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court :

This was a suit in chancery brought by defendants in error, in the Marshall circuit court, against plaintiffs in error, to redeem a number of tracts of land from a mortgage. It appears the mortgage was executed by defendants in error to Pratt Roberts, and was to secure the sum of eight thousand dollars, with interest at the rate of ten per cent per annum, payable semi-annually. The mortgage bore date on the thirtieth day of July, 1858, and the money became due on the thirtieth day of July, 1862. The mortgage contained a power to Roberts, as the attorney of Fleming and wife, if default should be made in the payment of principal or interest, after giving twenty days' notice in a newspaper published in Chicago, to sell and convey the mortgaged property, which should bar the equity of redemption.

Default having been made in the payment of interest, on the sixth day of December, 1860, Roberts, having published the required notice, offered the property for sale, and his son, Charles W. Roberts, became the bidder, for the amount of principal and interest, and on the eighteenth day of May, 1865, Pratt Roberts, as the attorney in fact of defendants in error, executed a deed of conveyance for the land, to Charles, in pursuance to and by reason of such sale.

After defendants in error had executed the mortgage to Pratt Roberts, they, on the twenty-second day of September, 1858, executed another mortgage on the same lands to Robert F. Hoops, to secure the payment of three thousand dollars, and interest. Default in payment having also been made in the payment of this sum, Hoops, by virtue of a power of sale contained in this mortgage, on the nineteenth day of May, 1860, sold the mortgaged premises to one Paschal Woodward, for the sum of thirty-five hundred dollars. In pursuance of the sale, a deed for the conveyance of the land was executed

to him as the purchaser, on the twentieth day of January, 1866, and Woodward subsequently re-conveyed to Hoops. And on the first day of February, 1860, defendants in error quit claimed the mortgaged premises to Loring G. Pratt. Afterwards, and before the bill was filed, Pratt re-conveyed the premises, by quit claim deed, to Mrs. Fleming.

On the fourteenth day of October, 1864, Hoops, and one N. J. Pillsbury, by Fleming as his attorney in fact, entered into a written agreement, in which Hoops agreed to sell and convey all his interest in the mortgaged lands to Pillsbury, for the sum of one thousand dollars, but payment was not to be made until the suit was decided, and then only upon the condition that defendants in error obtained a decree allowing a redemption. This agreement was subsequently assigned by Pillsbury to Mrs. Fleming, together with the mortgage of Fleming to Hoops.

It also appears that on the ninth day of May, 1857, more than a year before defendants in error mortgaged the lands to Pratt Roberts, Michael Sloey and James Leary recovered a judgment against Fleming, in the circuit court of Marshall county, and one Vattier also recovered a judgment against him at the same term, which judgments became liens upon the premises. Executions were issued on these respective judgments, on the nineteenth day of September, 1857, and under them three quarter-sections of the mortgaged lands were sold. Sloey and Leary purchased two quarters under their execution, and Vattier purchased one under his, and no redemption was made from these sales. Subsequently, Sloey and Leary conveyed the two quarters purchased by them to George Roberts, a son of Pratt Roberts, for the expressed consideration of six hundred dollars. George Roberts died intestate, owning these lands, leaving Pratt and Ann Roberts, his father and mother, and Charles W. Roberts, his brother, his sole heirs at law. It does not appear that Vattier ever procured a deed for the quarter he purchased at sheriff's sale. On the

hearing, the court below decreed a redemption of all the lands, and that Pratt Roberts account for rents and profits.

It is urged that Mrs. Fleming has no title which authorizes her to redeem the premises. That depends upon the question whether Pratt Roberts, by the sale of the premises to his son Charles, foreclosed and barred the equity of redemption in the mortgaged lands. As a general rule, the law will not permit a trustee, or person who occupies a fiduciary relation, to become a purchaser at a sale made by him, of the trust property. It will not subject him to the temptation of sacrificing the property to promote his own interest. And most, if not all, the authorities concur in holding that such a sale will be set aside, on an application to a court for the purpose. Nor will the law permit a person to do by indirection, what he is prohibited from doing directly. If, then, Pratt Roberts, in making the sale, resorted to the device of having the property struck off to Charles, as the purchaser, when he in fact only held it in trust for his father, the mortgagee and trustee to make the sale, then it did not operate as a foreclosure any more than if the sale had been to himself. In such a case the rights of the mortgagor would remain unaltered, and precisely as though no such effort at a sale had been made.

From a careful examination of the evidence in the record, we are satisfied it appears that Charles purchased for his father. It appears that the latter, after the sale, controlled the property, leased it, received the rents and contracted for its sale, and in other respects acted as the owner. Nor does it appear that Charles paid anything on the purchase, or ever asserted by his acts any ownership. Notwithstanding the relationship existing between them, their acts in reference to this property can not be explained upon any other theory but that Charles had purchased the property for his father. It then follows, that the sale failed to foreclose and bar the right of defendants in error from a redemption.

It is, however, urged that the sale under execution on a judgment which was a prior lien on the land, in favor of Sloey

and Leary, and Vattier, operated as a foreclosure, to the extent of the lands sold under those executions. As these judgments were liens on the lands when the mortgage was executed, it was undeniably subject to these liens, which were superior. Fleming and Roberts, having failed to redeem from these sales, when the twelve months allowed them for redemption had expired all their rights were gone, and when the purchasers under the executions received the sheriff's deeds, they became invested with the title, and the right of redemption of Fleming, Roberts and Hoops was barred.

It then follows, that the half section purchased by Sloey and Leary, under their execution, can not be considered, on the question of redemption; to that, Roberts, by the purchase through his son, became invested with the title. And as Vattier purchased the other quarter under his judgment, which was a prior lien, the presumption must be indulged that he thereby acquired title, as no redemption was made, and it follows that Mrs. Fleming has no right to redeem it, unless she shall amend her bill and show a redemption, or that Vattier's demand was settled after the purchase, and his right was extinguished, or that she has, in some other mode, acquired Vattier's right under his sale. And it follows that Croft, who purchased the Vattier quarter of Roberts should not, as the record now stands, be liable, under his purchase, to account to Mrs. Fleming, either for the purchase money, or the rents or profits, nor can Pratt Roberts be required to account to her for such rents or purchase money. On this record, that quarter is also not to be taken into consideration. This, then, disposes of all questions in reference to these three quarters.

It is, however, urged that these sales were at a great sacrifice, and that the land should have been sold in smaller quantities. It is no doubt true, that had the objection been taken before the redemption expired, the court from which the executions issued would have set aside the sales, had it appeared that such was the fact. But no such motion was

made, nor were any other steps effectually taken for the purpose, until the bill in this case was filed. After such delay, and unexplained inaction on the part of the owners, a court of equity should hesitate long before interfering to set aside a sale, merely because the property was sold for less than its value, or for the reason that it could have been divided and sold in less quantities. When such objections are relied upon, they should be urged at least within a reasonable time. In this case, the delay seems to have been between seven and eight years; we therefore decline to inquire whether the price bid was inadequate, or whether the sheriff should have sold the property in smaller quantities.

When Pratt Roberts, then, purchased the two tracts through his son George, of Sloey and Leary, he became the owner of the fee to them, free from all equities of redemption by defendants in error. And by that purchase he foreclosed on these two quarters, and his debt became satisfied to the extent of his bid on these quarters, when he attempted to purchase through his son Charles. And having purchased in this outstanding title at but a nominal price, as compared with the value of the land, by reason of his holding the mortgage, he must be held to have satisfied his debt to the extent of his bid, made by Charles W. Roberts, and should not be required to account for rents and profits, after he acquired that title.

We now come to the consideration of the question whether Mrs. Fleming has such a title as authorizes her to redeem. As Pratt Roberts failed to foreclose by his attempted sale, Hoops or Fleming might either have redeemed from the mortgage held by Roberts, except the half section sold by Sloey and Leary. And Hoops, having that right, transferred it to Pillsbury by his agreement of October 14, 1864, and Pillsbury transferred it to Mrs. Fleming, by his assignment to her, on the first day of December, 1864. Again, Fleming and wife transferred their right of redemption to Loring G. Pratt, by their quit claim deed, which he transferred to Mrs. Fleming by his release. She, therefore, became invested with the right

of redeeming all the lands except the half section sold to Sloey and Leary under the sheriff's sale, and the quarter purchased by Vattier.

It is urged that Mrs. Fleming acquired her rights after the bill was filed, and has not, therefore, shown by proof· that she is entitled to redeem. The bill appears, from the transcript, to have been filed to the January Term, 1865, of the circuit court, and the assignment made to her of the agreement between Hoops and Pillsbury, was on the first day of December, 1864. The record also shows that Pratt quit claimed to her on the seventh day of October, 1864. She, then, was fully invested with all her rights before the suit was brought.

. It is urged that the bill is defective for the want of parties. Hoops was not made a party to the suit, and it appears he has an interest in the proceeding. It is true, he seems to have executed an agreement to dispose of his interest in the premises, and as it is but an agreement, the terms of which remain unexecuted, he should have been before the court, that he might have been heard if he had any defense, to prevent it from being carried into effect. Had he executed a deed, then he would not be a necessary party. But Mrs. Fleming took the assignment, subject to any equities that might exist between Hoops and Pillsbury, and the former should have been made a party, that he might be concluded by any decree that might be rendered; otherwise, the chancellor could not know whether he was trying the whole case on this bill, or only trying it by fragments.

We now come to consider the situation which the purchasers from Pratt Roberts occupy to the case. It seems that Ong purchased one of the quarters which had been sold under Sloey and Leary's judgment, and as Roberts had acquired the title to that tract, freed from the right of redemption, he can not be disturbed by defendants in error. He purchased it in the same condition in which it was held by his vendor.

It appears that Whitsel and Phillips purchased one quarter, which was subject to redemption, after this suit was brought.

Being purchasers *lis pendens*, they are chargeable with notice of Mrs. Fleming's rights, and acquired but the rights which Pratt Roberts had at the time of making the purchase. They therefore have no right to have their contract enforced unless it be by the consent of defendants in error.

We shall next proceed to lay down the terms upon which the redemption will be allowed. The bill should be dismissed as to the half section which was purchased by Sloey and Leary, and the quarter purchased under the sale on Vattier's judgment, except for the purpose of stating an account as hereinafter directed.

The master, in stating the account, should credit and allow Pratt Roberts the amount of his mortgage debt, with interest. He should also be allowed for all taxes paid upon the land, and for all reasonable repairs made upon the premises, and owing to the delay in filing the bill to redeem, he should be allowed for necessary and permanent improvements, if any, made before the suit was brought. On the other hand, he should be charged with the amount which he bid at the mortgage sale, on the half section sold on Sloey and Leary's judgment, and the Vattier quarter, and all rents and profits received, or which could have been received, by reasonable effort and proper management of the property.

For the errors above indicated, the decree of the court below must be reversed and the cause remanded, with leave to amend the bill.

*Decree reversed.*

The foregoing opinion was filed as of the January term, 1869, and at the January term, 1870, on the petition of the defendants in error, a rehearing was granted, upon which the following additional opinion was delivered:

Per CURIAM: It is urged that Roberts, by reason of his being a mortgagee, occupied such a trust relation to the mortgaged premises, as prevented him from purchasing in an outstanding title for his own benefit; that when he purchased

of Sloey and Leary, the title which they had acquired under the sale upon their execution, it enured to the benefit of the mortgagor, subject to the mortgage and the sum paid to acquire their title, and that it was still subject to redemption as before that purchase. In the case of *Worthall's heirs* v. *Rives*, 34 Ala. 92, the court say, the "mortgagee was not estopped by his acceptance of the mortgage, from purchasing the property conveyed by the mortgage, under the judgments having a priority of lien to the mortgage; and if it should appear in the further progress of the case, that he made such purchase, he would establish a title beyond the reach of complainants."

In the case of *Harrison* v. *Roberts*, 6 Florida R. 711, it was held, that there was no rule of law or principle of equity which prevents a first mortgagee purchasing the mortgaged property, when sold under a judgment of prior date to the mortgage, and in such a case he takes the absolute title.

Thus it is seen that the relations existing between a mortgagor and mortgagee, are not such as to prevent the latter from acquiring and holding an outstanding title in his own right, or from becoming the purchaser of the equity of redemption, which has passed from the mortgagor, under a sale on a prior lien, to a third person. Nor have we been referred to any authority which contravenes this power, nor is it apprehended that any well considered case can be found. It is, however, urged that the case of *Moore* v. *Titman*, 44 Ill. 367, announces a rule, the principle of which would prevent such a purchase. In that case authorities are referred to, showing that there may be circumstances which would prevent the mortgagee from thus acquiring the title, and cut off the mortgagor's equity of redemption.

In that case, there was some arrangement by which Titman was to purchase the outstanding title, and Moore was to have time to refund the money and to redeem from Titman's mortgage. It was there said, there were many things which the

mortgagee could not do in reference to the title which a stranger might, but it was also said, that in the case then being considered, it was unnecessary to hold that the mortgagee occupied the relation of a trustee to the property, as by the agreement of the parties the outstanding title, when purchased, was to attend the mortgage, and the time for redemption was extended by agreement.

It was also said in that case, " we do not say that a mortgagee can in no case buy in an outstanding title and hold it against the mortgagor, without the right of redemption by the latter; but we do say that a mortgagee can not buy in an outstanding title, under an arrangement with the mortgagor that it is to be held, like the mortgage, subject to redemption, and when the title is acquired turn around and insist that he has purchased as a stranger. This would be a short mode of foreclosing which the law will not tolerate."

It thus appears that case turned entirely upon the fact that the purchase was made under an arrangement of the parties that the estate, when purchased, should attend the mortgage, and the question we are now considering, was expressly reserved from a decision.

This question was before the court since the previous opinion was filed, in the case of *Griffin* v. *The Marine Company*, 52 Ill. 130. In that case the question was fully considered, and the rule announced that the relation of mortgagor and mortgagee, of itself, does not preclude the latter from purchasing in, and holding in his own right, an outstanding title, or the equity of redemption, free from the claim of the mortgagor.

The naked question here presented, is, whether a mortgagee may purchase in an outstanding title, or the equity of redemption, which has been sold under a judgment which was a prior lien, where he has made no arrangements, promises, or done any act that would preclude him from purchasing, unless the mere relation of mortgagee would preclude him. Upon the authority of the decisions of the Alabama and Florida

courts, to which reference has been made, and from reason and the analogies of the law, we are constrained to hold that the mortgagee thus situated, may purchase in an outstanding title, or the equity of redemption, either from the mortgagor, or from a third person, who has acquired it by grant directly from him, or by a purchase under a judgment or decree, which is a prior lien to his mortgage, and hold the title absolutely.

In the opinion, however, previously filed in this case, we, in directing the manner in which the account should be stated, directed that Roberts be allowed the sum he paid to Sloey and Leary for their title to the lands purchased of them. On more mature reflection, we are satisfied we had not given that question proper consideration, and that the direction was wrong, as he purchased and held them in his own right, and not subject to redemption by the mortgagor. He should, therefore, not be allowed the sum thus paid, and the circuit court will exclude that sum from Robert's credits, in stating the account. To that extent, only, is the former decree remain of this court modified, and in other respects it will unchanged. The decree of the court below is reversed and the cause remanded.

*Decree reversed.*