THOMAS E. HELM ET AL. *v.* JAMES R. YERGER.

1. TRUSTEE'S SALE. *Contract for minimum bid. Violation.*

If a trustee, who is a stockholder and cashier in a bank which owns the debt secured by the trust deed, in order to prevent the enjoining of his sale, agrees on a minimum bid with the debtor, under the bank president's approval, a deed to the president for less is subject to the debtor's disaffirmance.

2. SAME. *Public bid. Substitution of another act.*

The fact that the officers of the bank regard the secured debt, which was the amount of the agreed bid, as paid by the sale, does not preclude the debtor's bill to cancel the trustee's deed and redeem, if the president knew that he purchased at the auction for a less sum.

3. SAME. *Bill to cancel. Limitation.*

How long the debtor can delay before proceeding in an ordinary case of trustee's sale, *quære;* but it appears that he cannot cancel the deed, if he neglects to assert his right until it would be a surprise to the purchaser.

4. SAME. *Limitation of action. Beneficiary's possession.*
   If the *cestui que trust* holds possession under a contract to apply the rents to the debt before the sale, and the debtor protests immediately after, his remedy to cancel the trustee's deed for error exists as long as he could have maintained a bill to redeem.

APPEAL from the Chancery Court of Hinds County.

HON. E. G. PEYTON, Chancellor.

On December 23, 1872, James. R. Yerger and Thomas E. Helm jointly purchased the property in controversy, consisting of a theatre and bank building in the city of Jackson, for fifteen thousand dollars. Each paid half of the purchase-money; but Yerger, who had but four thousand dollars available, borrowed three thousand five hundred dollars from Helm to complete his payment. In order to secure this loan, he conveyed his half of the property to John H. Odeneal, as trustee, with power to sell on default. On January 29, 1874, Yerger, who, up to this time had charge of the property, made a settlement of the rents with Helm, and, at the latter's request, turned over the buildings to the trustee. Odeneal was to collect the rents for Helm and Yerger; and he continued to act for their common interest, but failed to account with Yerger for rents collected. He was also to apply half the profits to the secured note. On January 25, 1875, Yerger moved to Washington County. The note was then assigned to the Capital State Bank, of which Helm was president and Odeneal cashier. Both were stockholders. Thus matters stood until March 7, 1878, when Odeneal having advertised the property for sale, Yerger demanded an account, claimed credits on the note, and threatened an injunction unless the rents were adjusted. Finally Yerger and Odeneal, with whom he was negotiating, executed a written agreement, which both signed, to the effect that Yerger consented to the sale upon the understanding that Odeneal guaranteed that the property should be bid off to Thomas E. Helm, president of the Capital State Bank, at not less than four thousand eight hundred dollars to be credited on the note, which was the principal and interest to March 11, 1878, the advertised sale day. The president approved this agreement.

On January 14, 1881, James R. Yerger exhibited his bill against Thomas E. Helm, John H. Odeneal, and the Capital State Bank, stating the facts, and averring that, in violation of the agreement, the property was bid off to Helm, president of the bank, at twenty-one hundred dollars; that Odeneal, notwithstanding Yerger's protest at the sale and after, conveyed the buildings to Helm, president, erroneously reciting that the bid was four thousand dollars, and that Odeneal and Helm, who were partners in this real estate adventure, continued to hold the property, and refused to account for profits accruing after March 11, 1878. The prayer was that the trustee's deed should be canceled, an account taken of rents and profits, the note, if paid, ordered to be surrendered, and that general relief should be granted. The defendants answered that the public bid was four thousand dollars, as recited in the trustee's deed, but that the note was considered paid by the sale, and the bank officers regarded it as so valueless that it was mislaid and could not be produced; that the respondents were and always had been ready to account with Yerger; and appending as an exhibit to their answer an itemized statement of rents collected and expenses incurred, they made their answer a cross-bill, and prayed that Yerger might be charged with the balance, shown to be due to the Capital State Bank upon the exhibit, in any accounting which might be ordered. Depositions were taken of Yerger, and the officers of the bank, proving the facts stated in the opinion, and at final hearing, the Chancellor decreed that the trustee's sale and deed to Helm, president, should be set aside, and referred the case to a special commissioner to take testimony and state an account between the parties, in order that Yerger might redeem the property by paying off the mortgage, and, after giving instructions to the commissioner, reserved all other questions until he should make his report. From this decree all the respondents appealed.

*Nugent & McWillie,* for the appellants.

1. James R. Yerger's note was treated as paid by the sale. Nothing more could have been accomplished by a bid of the principal and interest. The written agreement was equivalent to a receipt for

the face of the note, because any balance unpaid by the sale was the result of a violation of the contract, and the bank could take no advantage from this. In effect the agreement has been fulfilled by the bank, and Yerger has received every benefit for which he contracted. Courts do not correct unconscientious acts which result in no loss or damage. Story Eq. Jur., § 203. This doctrine prevails in law courts as well as in equity tribunals. *Bacon* v. *Bronson*, 7 John. Ch. 194. If the trustee sold the property for less than the agreed price, he is liable personally. *Caldwell* v. *Brown*, 36 Ill. 103. But in a suit against Odeneal no damage to Yerger could be shown to have resulted. The bank is not liable for the cashier's unauthorized act. *United States* v. *City Bank of Columbus*, 21 How. (U. S.) 356; *Bank of the Metropolis* v. *Jones*, 8 Peters 12; *Watson* v. *Bennett*, 12 Barb. 196. A stockholder is not an agent of the corporation. *Conro* v. *Port Henry Iron Co.*, 12 Barb. 271; *Dana* v. *Bank of the United States*, 5 Watts & Serg. 223, 247. A sale to the president was not a sale to the bank. Thompson on Liability of Stockholders, § 1. If the cashier's conduct was illegal, it was promptly disaffirmed by the corporation, which held the note as paid and subject to the debtor's order.

2. James R. Yerger cannot now complain of Odeneal's conduct. He has allowed too much time to pass. The contract was for his benefit alone. Sales like this are voidable only, and may be ratified by implication as well as in express terms. *Ives* v. *Ashley*, 97 Mass. 198; *Davoue* v. *Fanning*, 2 John. Ch. 251; *Mercer* v. *Newsom*, 23 Ga. 151; *Torrey* v. *Bank of Orleans*, 9 Paige 649; *Hawley* v. *Cramer*, 4 Cowen 717, 743; *Thorp* v. *McCullum*, 1 Gilman 614; *Boyd* v. *Blankman*, 29 Cal. 19; *Dunlap* v. *Mitchell*, 10 Ohio 117; *Painter* v. *Henderson*, 7 Penn. St. 48. Acquiescence in the sale for a sufficient length of time, implied from a failure to attack, is a ratification. The courts have forborne to prescribe any specific period, but leave this to be determined by the circumstances of each case. This court held, in the case of *Jones* v. *Smith*, 33 Miss. 215, that three years and eight months was too long, although it noted the "forlorn condition" of the widow, Mrs. Jones, as being some excuse. In the case of *Scott* v. *Freeland*, 7 S. & M. 409, the delay

of an heir for about one year after his majority to institute his suit to set aside a sale made by a trustee to himself during the heir's minority, was held sufficient to prejudice his rights. What then shall be said of eighteen months' delay by Yerger, who was neither an infant nor a forlorn widow, but an intelligent man, fully conversant with his rights? His remedy is clearly lost, owing to his failure to move until the debt became barred by limitation.

*Thomas A. McWillie,* on the same side, made an oral argument.

*Frank Johnston,* for the appellee, argued orally and in writing.

1. Where a mortgagee is invested with the power of sale, it must be exercised with scrupulous integrity, and slight circumstances are sufficient for setting aside the sale. Perry on Trusts, § 602' a. *et seq.;* Jones on Mortgages, §§ 1876, 1877, and notes; Bigelow on Fraud 245. Without the agreement, the sale would have been void. But this contract, without which Yerger would not allow the sale to take place, was flagrantly violated. Helm either acquired a title at the sale, or he did not. The parties could not afterward patch up the title. Its validity depends upon the facts existing when the sale was made. Where a sale is set aside on account of the constructive fraud of the purchaser, the parties should be placed in the same situation that they were before the sale. 2 Hilliard on Mortgages 254, § 31. The property is to be re-exposed for sale. *Requa* v. *Rea,* 2 Paige 339; *Campbell* v. *Gardner,* 3 Stock. (N. J.) Eq. 423; *Billington* v. *Forbes,* 10 Paige 487; *Collier* v. *Whipple,* 13 Wend. 224; *Davoue* v. *Fanning,* 2 John. Ch. 251. A purchaser under a defective sale only acquires the *status* of a mortgagee in possession. *Walsh* v. *The Rutgers Fire Ins. Co.,* 13 Abb. Pr. 33, 38. The court cannot change the terms of the sale and then confirm. Rorer on Judicial Sales, § 126. No title passed at the time of the sale to Helm unless the essential requisites of the power were strictly complied with. *Ormsby* v. *Tarascon,* 3 Litt. (Ky.) 404, 405; *Hall* v. *Towne,* 45 Ill. 493. Sales under powers in deeds of trust are jealously watched by courts of equity, and when the power has been fraudulently, oppressively, or irregularly exercised the owner will be allowed to impugn the sale and redeem the property.

2. The right to set the sale aside does not become extinct by lapse of time, unless the property goes into the hands of an innocent purchaser. *Penny* v. *Cook*, 19 Iowa 538. In case of *actual* fraud no delay prevents relief. Perry on Trusts, § 229. The sale as made was fraudulent. Helm acquired no title. The defendant's equity of redemption was not destroyed. Nothing but a fair and regular sale of the property could cut off the equity of redemption. The court cannot by a decree give Helm a good title. Nor can he come into court with a better bid, and thus render a sale valid which was fraudulent when made. The mortgage has simply not been foreclosed and the defendant can redeem. If he does not, the mortgage can be foreclosed by sale. With Helm only as a mortgagee in possession, it is idle to say that the defendant's equity of redemption does not exist. In this extraordinary process of patching up the fraudulent sale, Helm must invoke an agreement that he has repudiated. Broken and disregarded on one side, it is at an end. The note is not treated as barred by limitation, but the complainant is by the decree permitted to redeem. Suppose that the stipulations of the agreement were embodied in the deed of trust as a limitation on Odeneal's power, and were violated. In such a case the sale would be set aside and the parties placed in the positions occupied by them before the sale, which was that of mortgagor and mortgagee. The bill seeks a redemption, and treats the mortgage as an existing lien for all that is due.

COOPER, J., delivered the opinion of the court.

The relative situation of the parties was such that it devolved the duty on the trustee to carry out the agreement as to the terms of the sale under the deed of trust, or to postpone the sale until Yerger should have an opportunity to assert his right to an account in a court of equity, which right he had waived in consideration of the agreement of Odeneal that the property should not be sold at a less sum than four thousand eight hundred dollars. This agreement had been submitted to and approved by Helm, the president of the bank, holding the secured debt. The contract operated as a modi-

4

fication of the power of the trustee to sell on the day named in the notices of sale, and one having notice of the modification could not acquire title to the property by purchasing at a sale made in violation of the contract. A title so acquired would be subject to the right of Yerger to ratify or disaffirm.

The fact that the holders of the note considered it as paid by the purchase, was not a compliance with the terms of the agreement. By the contract the sum agreed on was to be bid for the property at the public sale. It was not within the power of either of the parties, without the consent of the other, to add to or subtract from the contract as made, or to substitute another thing for that agreed to be done. Helm, as president of the bank and purchaser of the property, knew the price which the trustee had agreed he should bid, he had ratified and thereby bound himself to the performance of the contract. He knew from the recitals of the deed executed to him by the trustee that the contract had been violated. He must be presumed to have known that a credit was entered on the note for a less sum than he had agreed should be offered. The receipt of the deed and the entry of the credit on the note were equivalent to an assertion by him that he was the purchaser of the property at the price named in the conveyance, and that the excess of the note above the purchase-money remained due and unpaid. The books of the bank and the note itself were exhibited to Yerger when he called to inspect them, and from them he must have inferred that the bank claimed a balance against him on the note. While the several officers of the bank testify, and we have no doubt truthfully, that the note was considered as paid and would have been surrendered to Yerger if it had been demanded by him, yet it remains true that no offer was made by the bank to surrender it, and when Yerger called to examine the books the note was exhibited to him with a credit entered on it of less than the balance due on it. Nothing was said then or at any other time advising him of the fact that the bank considered the note as paid, or that it was subject to his control; he had, therefore, a right to infer that the balance appearing due would be claimed against him.

What delay in proceeding by the complainant in cases of this

class will be held as a bar to relief must depend upon the facts and circumstances of each particular case. Courts of equity will refuse relief to one who, having a right, neglects to assert it until its assertion would be a surprise upon the defendant and involve him in litigation in reference to a matter which he, by the conduct of the plaintiff, had been led to believe had been abandoned. Without attempting to indicate any particular time which should be held to be a waiver of his rights by a complainant seeking to avoid a sale in those cases in which possession of the property has been yielded to the purchaser at the sale, we are of opinion that the plaintiff herein was rightly admitted to redeem. The mortgaged property had for several years previous to the sale been in the possession of the trustee Odeneal, who was also a part owner of the mortgage debt, under an agreement that the rents and profits of the property should be appropriated to the payment of this debt. It was in his possession at the time of the sale. The sale was made in admitted violation of the terms of the contract, by which it was to be governed, and was followed by no actual change of possession of the property. Those who had before held as mortgagees in possession thereafter claimed to hold as purchasers under the sale. This was a mere assertion of a right. On the other hand, the mortgagor promptly repudiated the sale, and denied that his equity of redemption had been cut off. This was an equally strong assertion of a counter right by the complainant. Whether the sale was valid or voidable, the complainant was not entitled to possession of the property. If the purchaser acquired title at the sale, he was entitled to hold possession as owner; if he did not, he was still in possession as mortgagee, and entitled so to continue until the mortgage debt should be fully paid. Under these circumstances we are of opinion that the right of the mortgagor to relief would not be barred by the lapse of any time short of that which would operate as a bar to a bill to redeem.

*Decree affirmed.*