SAMUEL M. HOUSTON *v.* NATIONAL MUTUAL BUILDING & LOAN ASSOCIATION ET AL.

| 80 | 31 |
| 88 | 97 |

| 80 | 31 |
| f90 | 641 |

| 80 | 31 |
| 95 | 574 |

1. MORTGAGES.    *Sale by mortgagee.    His purchase at same.    Trusts and trustees.*

A mortgagee cannot, at his own foreclosure sale, under a power contained in the mortgage, purchase the mortgaged property, either directly or indirectly, unless the mortgage confers such right or the mortgagor consents to the purchase; and the sale may be avoided by the mortgagor or his assigns without proof of fraud or unfairness therein. *Byrd* v. *Clark,* 52 Miss., 623, cited.

Syllabus.

2. **SAME.** *Purchase for mortgagee.*

Where one who purchases at a sale under a mortgage made by the mortgagee pays nothing on his bid, the amount of the same, less the expenses of sale, being credited on the mortgage debt, and a few days after the sale conveys the property to the mortgagee, the purchase will be treated as that of the mortgagee, such nominal purchaser being only a conduit of the title.

3. **SAME.** *Laches. Bill to redeem. Statute of limitations. Code 1892, § 2732.*

The doctrine of stale claims not prevailing in this state, mere laches, unaccompanied by facts creating an estoppel, constitutes no defense to a bill to redeem land illegally purchased by a mortgagee at his own sale, there being no bar from any lapse of time short of the ten years' limitation applicable, under code 1892, § 2732, to bills to redeem where the mortgagee has obtained actual possession after condition broken. *Westbrook* v. *Munger*, 61 Miss., 336; *Hill* v. *Nash*, 73 Miss., 862, cited.

4. **SAME.** *Grantee of mortgagee. Right to redeem. Quit-claim.*

The right of a grantee in the quit-claim deed of a mortgagor to redeem land held by the mortgagee under a voidable purchase at his own foreclosure sale, is not affected by the fact that the deed was not executed until after such sale. *Wade* v. *Thompson*, 52 Miss., 367, distinguished.

5. **SAME.** *Equity of redemption. Maintenance. Code 1892, § 2433.*

A quit-claim deed to mortgaged property, executed by the mortgagor after a voidable purchase by the mortgagee at his own foreclosure sale, is not a mere assignment of the right to maintain a suit for the fraud of the mortgagee, and therefore void as in the nature of maintenance, but operates to pass the equity of redemption, under § 2433, code 1892, providing that a writing, signed and delivered, which purports to convey any interest in or claim to land shall transfer the title of the grantor, with all of its incidents, and § 2438 of said code, providing that a quit-claim conveyance shall be sufficient to pass all the estate or interest of the grantor in the land conveyed. *Cassedy* v. *Jackson*, 45 Miss., 397, cited.

6. **SAME.** *Mortgagee. Bona fide purchaser. Remedy.*

A mortgagee who has illegally purchased at his own foreclosure sale, and afterward sold and conveyed the property to an innocent purchaser, may be required, in a proceeding to redeem, to pay the sum received from his vendee, and the latter to pay the deferred payments to the mortgagor or his assigns.

FROM the chancery court of Lauderdale county.

HON. STONE DEAVORS, Chancellor.

Houston, appellant, was complainant, and the National Mutual Building and Loan Association and others, appellees, were defendants in the court below.

On May 25, 1892, Mrs. Justa M. David executed a mortgage to the National Mutual Building & Loan Association to secure to it a debt of $1,100, money loaned to her. It was provided in the terms of the mortgage that, upon default made in the payment of the debt as provided in it, it should be lawful for the mortgagee to enter upon the premises and sell and dispose of same, and all benefit and equity of redemption of the mortgagor, her heirs and assigns, at public auction, and to make and deliver to the purchaser a good and sufficient deed of conveyance, which should forever be a perpetual bar, both in law and equity, against said parties, their heirs and assigns, and against all persons claiming under them. There was default made in the payment, and the National Mutual Building & Loan Association advertised the property mortgaged for sale, and sold it July 1, 1895, at public auction; and it was bid off by one George J. Peet, and a deed to the property was made to him. Peet did not pay the purchase money bid, but credited the amount of his bid on the debt owed by Mrs. David to the National Mutual Building & Loan Association, after deducting the expenses of the sale. On July 13, 1895, Peet deeded the property to the National Mutual Building & Loan Association. The building and loan association afterward sold a portion of the property to Mrs. Katharine and W. H. De Loach, and they had paid part of the purchase money to it when this bill was filed. After this, S. M. Houston purchased from Mrs. David all the property, she making him a quitclaim deed. Houston then filed the bill in this case, setting up the foregoing facts, and asked the court to cancel the deed to Geo. J. Peet, and that the mortgage and the deed to De Loach be also canceled as clouds upon his title, and asking for an accounting, and ten-

dered what was lawfully due the National Mutual Building & Loan Association. There was also alternative relief prayed, in the event the court held that De Loach was an innocent purchaser for value without notice, and got a good title, that defendant be required to pay complainant the rents it had received, and to require De Loach to pay the balance of the purchase money to him. On final hearing, complainant was denied all relief, and his bill dismissed. From that decree he appealed to the supreme court.

*S. A. Witherspoon,* for appellant.

In view of the fact that the mortgage gives the mortgagee the power to sell, but does not give him the power to buy in the property at its own sale, its action in buying in the property (through the instrumentality of another) rendered the sale voidable at the instance of the mortgagors, or their successors in title, or others interested. It has been decided in this state, in the case of *Byrd* v. *Clarke,* 52 Miss., 623, that a mortgagee with power of sale cannot buy at his own sale unless the mortgage itself confers such authority. 26 Am. & Eng. Ency. Law, 928; *Wade* v. *Thompson,* 52 Miss., 367.

It is expressly held in *Roberts* v. *Flemming,* 53 Ill., 196, that a party having a quitclaim deed from mortgagor may, under such circumstances, file a bill to redeem where the mortgagee with power of sale purchases at his own sale. By § 2433 and § 2438, code 1892, the appellant, Houston, being the vendee of the mortgagors, had a right to file this bill. *Cassedy* v. *Jackson,* 45 Miss., 397.

The record shows conclusively that Peet was simply a conduit of the title, and not a real purchaser. That being the case, his bid will be deemed in law to be the bid of the National Mutual Building & Loan Association. *"Qui facit per alium facit per se."* *Thornton* v. *Irwin,* 43 Mo., 154; *McNees* v. *Swaney,* 50 Mo., 388.

As bearing upon the foregoing with reference to the validity

of the aforesaid foreclosure sale, see the following: *Lucas* v. *Mortgage Co.,* 72 Miss., 366; *Dunton* v. *Sharpe,* 70 Miss., 850; *Thornton* v. *Irwin,* 43 Mo., 153; *Hall* v. *Turner,* 45 Ill., 493.

With reference to whether the laches of mortgagors or appellant, Houston, as charged in defendant's answer, is shown: The proof shows conclusively that Mrs. Justa E. David and her husband, W. J. David, the mortgagors, did not know until the latter part of the year 1900, or the first part of the year 1901, that the National Mutual Building & Loan Association was the real purchaser at the foreclosure sale of July 1, 1895. It also appears that the appellant, Houston, did not obtain his deed conveying mortgagors equity of redemption until three or four months before the bill was filed to redeem.

The court should have entered a decree giving appellant, Houston, possession of that portion of the lot not sold to De Loach, and as to the balance directed that De Loach should pay appellant the balance of the purchase money of his property, and that the appellee, the National Mutual Building & Loan Association, should pay appellant the amount collected by it on the thirteen notes.

*A. S. Bozeman,* for appellees.

This is not a sale by the mortgagee to the mortgagee. The mortgagee was the National Mutual Building & Loan Association, of New York, and the purchaser at the mortgage sale was George J. Peet.

If it be conceded that Peet bought the land at the mortgage sale for the use and benefit of the mortgagee, and intending subsequently to convey it to the mortgagee, still the sale was actually made to a third person, not the mortgagee, and it is not subject to the infirmity of a sale and conveyance by the mortgagee to itself. Technically, at least, it is a sale by the mortgagee to a third person, and I insist that under the facts in this case, in order to avoid the sale, the complainant must show some actual fraud on the part of the mortgagee, and some

resulting injury to the parties in interest, and this is neither charged nor proven.

Our own court, in the case of *Hyde* v. *Warren,* 46 Miss., 13, cites with approval several cases in which it was held that the mortgagee, with power of sale in himself, might purchase at his own sale.

It is held in many of the states that the mortgagee's title as purchaser is not absolutely void, nor *ipso facto* voidable, but becomes voidable by the owner of the equity of redemption on proof of any unfair advantage taken by the mortgagee, and I submit that this is the reasonable rule. *Howard* v. *Davis,* 6 Tex., 174; *Connolly* v. *Hammond,* 51 Tex., 635; *Marsh* v. *Hubbard,* 50 Tex., 203; *Woonsocket Sav. Inst.* v. *American Worsted Co.,* 13 R. I., 255; *Robinson* v. *Association,* 14 S. C., 148; *Mills* v. *Williams,* 16 S. C., 593; *Lewis* v. *Duane,* 69 Hun. (N. Y.), 28; *Elliot* v. *Wood,* 53 Barb. (N. Y.), 285, and 45 N. Y., 71; *Moritz* v. *St. Paul,* 54 N. W., 370; *Matthews* v. *Daniels,* 21 S. W., 469.

I submit, in the second place, that the mortgagor, having neglected to assert her rights to avoid the sale, if she had any, and having acquiesced in the sale and in the title and possession of the mortgagee for more than six years, would now be barred by her own laches, if she were the complainant, and the complainant can have no greater rights than the mortgagor, who was also the owner of the equity of redemption at the date of the sale. 26 Enc. Law, 980; (3) *Helm* v. *Yerger,* 61 Miss., 44.

The record shows that Mrs. Justa E. David was both the mortgagor and the owner of the equity of redemption at the time of the sale, and that the complainant below, Houston, was not a party to the mortgage and had no interest therein, nor in the mortgaged property at the date of the sale.

The rule is that only persons interested in the trust estate at the time of the sale are allowed to complain of irregularities in the sale, and that a subsequent purchaser from the mortgagor, with knowledge of the sale (as was Houston), cannot

raise the objection. *Wade* v. *Thompson,* 52 Miss., 367; *Wormell* v. *Nason,* 83 N. C., 32; *Whitehead* v. *Whitehurst,* 108 N. C., 458; Teideman Real Prop., sec. 365; *McCall* v. *Mash,* 89 Ala., 487; 26 Enc. Law, 977. The Mississippi case of *Wade v. Thompson* is directly in point and conclusive of this. *Walker* v. *Brungard,* 13 Smed. & M., 763; *Wightman* v. *Doe ex dem. Reynolds,* 24 Miss., 681.

At law the sale, if it has been regular and without fraud, is valid; the mortgagee being regarded as clothed with the legal estate. The sale can be disaffirmed only in a court of equity. That which remains in the mortgagor, therefore, lies in action, a mere right to sue. A right which exists only in action is incapable of assignment and conveyance, so as to authorize the assignee to sue in his own name. The complainant took no estate in the lands by the conveyance of the mortgagor; and did not acquire a right to disaffirm the sale in order to redeem. *Bernstein* v. *Humes,* 60 Ala., 582; *Crocker* v. *Bellangee,* 6 Wis., 645.

This is a bill to remove clouds on title, and I submit that under the rule laid down in *McCall* v. *Mash, supra,* the complainant has utterly failed to show that he has either the legal or equitable title to the lands, and for this reason the bill was properly dismissed. *Boyd* v. *Thornton,* 13 Smed. & M., 345.

I submit further that the transaction between Mrs. Justa E. David and complainant, upon which complainant based his right to maintain this suit, is against public policy, and void, and for that reason the bill was properly dismissed.

The record shows that for more than five years Mrs. David, the mortgagor, owned the equity of redemption, acquiesced in the validity of the sale, and made no protest or effort to disaffirm or redeem; that in the meantime the mortgagee had conveyed a part of the property to one De Loach; that Mrs. David did not approach complainant; but that on December 24, 1900, the complainant below approached Mrs. David in reference to the matter, and on his own proposition obtained from her and

her husband a conveyance of their interest in the mortgaged property and other lands, and thereupon instituted this suit.

The consideration of the deed to complainant is stated to be "$150 and a further agreement." The evidence shows that for this $150 Houston gave his note, which by its terms was payable after Houston should become into possession of the property; the understanding and agreement being that if Houston should not win this suit and get possession of the property, then the note would not have to be paid. In case the suit was won, Mrs. David and her husband were to have no interest in the land.

This was clearly the assignment of a bare right to file a bill in equity for an alleged fraud committed upon the assignor, and is void as against public policy, and as savoring of the character of maintenance. *Gruber* v. *Baker,* 9 L. R. A., 303 (Nev.), and citations p. 307 *et seq.;* Pomeroy's Rem., sec. 153; *Jones* v. *Babcock,* 15 Mo. App., 150.


WHITFIELD, C. J., delivered the opinion of the court.

It is settled law in this state that a mortgagee cannot purchase directly or indirectly at a sale under his mortgage, unless the mortgage confers such right, or the mortgagor consents to such purchase. *Byrd* v. *Clarke,* 52 Miss., 623. Counsel for appellees earnestly insists that the mortgagor and those claiming under him have no absolute option to avoid such voidable sale, but only an option conditioned upon the existence of fraud or unfairness in the sale. He cites some Texas cases and a few other cases to support that view. The reasoning of these cases is that, unless the mortgagee is permitted to buy at his own sale, the property might at some time be sacrificed—might be sold for less than the debt—and that thus there would result injury and loss both to the mortgagor and the mortgagee. The complete response to this is that the rule is a broad and universal one, based upon public policy, and not one which looks at all to the interest of the mortgagor or mortgagee in any par-

ticular case.  It is bottomed on the fundamental principle that no man shall be placed in a position where there shall arise a conflict between interest and integrity.  2 Jones Mortg., sec. 1877, says: "It is not necessary, in order to avoid the sale, to show that there was any actual fraud or unfairness in the transaction, when a mortgagee has violated the principle that a trustee can never be a purchaser.  There might be fraud or unfairness, and yet this could not be proved.  To guard against this uncertainty, and to place the trustee beyond the reach of temptation, the law allows the *cestui que* trust to set aside such sale at his option, without showing that he has been in any way injured.  A mortgage with a power of sale confers a trust coupled with an interest, but the rule applies with the same force as in the case of a naked trust.  Without the agreement or consent of the mortgagor, he can acquire no title by a purchase, directly or indirectly, at his own sale under the power."

In *Thornton* v. *Irwin,* 43 Mo., at pages 163, 164, the court say: "The doctrine that trustees, agents, administrators, guardians, attorneys, or others whose connection with any other person is such as to establish a confidential relation between them concerning his property, or give them special knowledge and opportunities in regard to it, cannot without, and often cannot with, his full knowledge and consent, become the purchaser of such property, is well settled in the jurisprudence of England and of the United States.  It is also well established by the civil law, and affirmed in those European states whose laws are founded upon it.  The leading case in England is that of *Fox* v. *Mackreth,* 2 Brown Ch., 400, heard twice before Lord Chancellor Thurlow in 1788, and reviewed in the house of lords; and the doctrine of that case is affirmed and extended in all the authoritative cases since that time.  Among the important cases in the United States where the question is involved are *Davoue* v. *Fanning,* 2 Johns. Ch., 252; *Michoud* v. *Girod,* 4 How., 503 (11 L. Ed., 1076); and *Gardner* v. *Ogden,* 22 N. Y., 327 (78 Am. Dec., 192).  Chancellor Kent, in *Davoue* v.

*Fanning,* gives a very able review of the English cases and
those at that time decided in this country, and leaves but little
to be said upon the question.   He states the true ground of the
position, and, in criticising some remarks of Lord Roselyn in
another case, says: 'The objection to most of these observations
is that they do not place the question on the true principle.
However innocent the purchase may be in the given case, it is
poisonous in its consequence.   The *cestui que* trust is not bound
to prove, nor is the court bound to judge, that the trustee has
made a bargain advantageous to himself.   The fact may be so,
and yet the party not have it in his power distinctly and clearly
to show it.   There may be fraud, as Lord Hardwicke observed,
and the party not able to prove it.   It is to guard against this
uncertainty and hazard of abuse, and to remove the trustee from
temptation, that the rule does and will permit the *cestui que*
trust to come, at his own option, and without showing actual
injury, and insist upon having the experiment of another sale.'
In *Michoud* v. *Girod* the interposition of the third person to
bid for the trustee was treated as itself a badge of fraud, and
Judge Wayne remarks: 'The rule of equity is, in every code of
jurisprudence with which we are acquainted, that a purchase by
a trustee or agent of the particular property of which he has
the sale, or in which he represents another, whether he has an
interest in it or not, *per interpositam personam,* carries fraud
on the face of it.'   In giving the reason of the rule, he says:
'The general rule stands upon our great moral obligation to
refrain from placing ourselves in relations which ordinarily
excite a conflict between self-interest and integrity.   It restrains
all agents, public and private; but the value of the prohibition
is most felt, and its application is more frequent, in the private
relations in which the vendor and purchaser may stand toward
each other.   The disability to purchase is a consequence of that
relation between them which imposes on the one a duty to pro-
tect the interest of the other, from the faithful discharge of
which duty his own personal interest may withdraw him.   In

this conflict of interest the law wisely interposes, and it makes no difference in the application of the rule that a sale was at public auction, *bona fide,* and for a fair price, etc. The inquiry in such a case is not whether there was not fraud in fact . . . The rule, as expressed, embraces every relation in which there may arise a conflict between the duty which the vendor or purchaser owes to the person with whom he is dealing, or on whose account he is acting, and his own individual interest.' " To the same effect is *Roberts* v. *Fleming,* 53 Ill., 196, and *Thomas* v. *Jones,* 84 Ala., 302 (4 So., 270). The running comment in *Hyde* v. *Warren,* 46 Miss., 28, 29, does not approve the cases which are cited. On the contrary, the court expressly refrains from expressing any opinion on the point.

Counsel next insists that this is not a sale by the mortgagor to the mortgagee, because George J. Peet purchased at the sale. But Peet was a mere nominal purchaser. It perfectly appears that he bought for the appellee on July 3, 1895, and conveyed to it on July 13, 1895. He paid nothing on his bid. He bid $1,075, out of which $43 were deducted for the expenses of the sale, and the balance was credited on the indebtedness of the mortgagor to the mortgagee. It is perfectly obvious that Peet was a mere conduit of the title for the mortgagee. In such case the law is exactly the same as if the mortgagee had bid in his own name in the first instance. This is expressly decided in *Roberts* v. *Fleming, supra,* at page 200, and also in *Thornton* v. *Irwin, supra.* Indeed, it needs no decision to maintain so manifestly proper a conclusion. *"Qui facit per alium facit per se."*

Counsel for appellees next insists that appellant is barred by unreasonable delay in filing the bill. If we were to deal with this question apart from the statutes of limitations, then no hard and fast rule can be laid down as to what is a reasonable time within which the mortgagor, or one claiming under him, should file the bill to avoid the sale and redeem. Each case must be determined upon its own peculiar facts. 2 Jones

Mortg., sec. 1885; 11 Am. & Eng. Ency. Law (2d ed.), p. 225, note 4, and the authorities.   In the section cited from Jones Mortg., thirteen years is held to be too long; and in the passage cited from the Encyclopædia twenty years is held to be too long. In this case it is shown conclusively that Mrs. David and her husband, the mortgagors, did not know until the latter part of 1900, or the first part of 1901, that the appellee was the real purchaser at the foreclosure sale on July 1, 1895, and that the appellant did not obtain the deed conveying the mortgagor's equity of redemption until some three or four months before the bill was filed.   It cannot be held, under the facts of this case, that the delay has been unreasonable, apart from the statute of limitations, especially in view of the fact that the appellant offered to do equity by paying the full amount—principal and interest—due on the mortgage debt to the mortgagee.   The mortgagee cannot sustain any possible injury.   If it does not get the property, it is because of its own willful folly in becoming the purchaser at its own sale.   But stale claims are unknown in this state, and hence a consideration of the effect of laches, wholly disconnected from any element of estoppel, in barring a bill to redeem, is, with us, useless.   There is no element of estoppel here, whatever.   *Helm* v. *Yerger,* 61 Miss., 44, points out the difference between mere laches and estoppel in cases of this sort.   The cases of *Westbrook* v. *Munger,* 61 Miss., at page 336, and *Hill* v. *Nash,* 73 Miss., at page 862 (19 So., at page 710), are conclusive that, so far as mere laches is concerned (there being no element of estoppel in the case), no lapse of time short of the period that would bar the bill to redeem under § 2732 of the code of 1892 (ten years), will bar the right to file the bill.   We said in *Hill* v. *Nash, supra:* "Finally it is contended by counsel for appellant that as ten years, lacking only four days, intervened between the death of N. P. Ragan, the father, and the date of the institution of the suit, a court of equity, in the exercise of its own inherent powers, independently of the statute of limitation, may and should

refuse relief, on the ground of discouraging stale claims or gross laches, or unexplained acquiescence in the assertion of an adverse right. Much and excellent authority is cited by counsel in support of this proposition, but it has been decided that there is no such thing as a stale claim, properly so called, in this state; and, by positive law, the statute of limitations is to be applied in our courts of equity as in our courts of law. With us no claim is barred until the limitation of the statute has accrued. Code, § 2731."

Counsel for appellees next insists that, even if the sale is voidable at the instance of the mortgagor, the appellant could have no right to maintain this bill, derived from his quitclaim deed from the mortgagor executed after the foreclosure sale; and he very earnestly contends that when the rule is announced that in cases of a voidable sale the mortgagor, or any person claiming under him, may avoid the sale, it is only meant that any person claiming under him at the date of the sale, and having at the time of the sale an existing interest in the property, may avoid the sale, and not one who acquires an interest under the mortgagor after the sale, and with notice of the sale. He cites many authorities, among which is *Wade* v. *Thompson,* 52 Miss., 367. Counsel misconceives this case. That was a contest between rival claimants of the title in ejectment, and not a bill filed to avoid a sale and to redeem. The case of *Wormell* v. *Nason,* 83 N. C., 32, does not support the contention. On the contrary, it expressly declares, on page 36, that the mortgagor, or any one claiming under him, as assignee or creditor, may file the bill to avoid the sale; and the court held that since the creditors were not prejudiced by the sale, and the administrator was not acting or professing to act in their interest, he could not, as administrator, on those facts, maintain such a bill. But the court expressly said that there might be cases in which even an administrator might file such a bill. The case of *McCall* v. *Mash,* 89 Ala., 487 (7 So., 770; 18 Am. St. Rep., 145), is the only case that we have seen that

appears to sustain the contention of counsel for the appellees.
And the whole case proceeds upon the idea that the equity of
redemption cannot be conveyed or transferred by a quitclaim
after a voidable sale, and that no bill could be maintained to
avoid such sale by one who purchased the equity of redemption
from the mortgagor, and obtained a quitclaim deed purporting
to convey the equity of redemption, after such voidable sale.
Whether this decision was based upon some statute does not
appear. The reasoning seems to be that whilst the equity of
redemption constitutes a beneficial estate in the land, and may
be conveyed as any other interest in the land prior to the fore-
closure sale, yet, after a foreclosure sale, though voidable,
it can no longer be so conveyed, because the equity is barred by
the foreclosure, and, being barred, no right of redemption ex-
ists. But this case obviously confuses a valid sale with a void-
able sale. So long as the sale remains voidable, it is liable to
be avoided upon a bill filed for that purpose; and, whenever
thus avoided, the *status quo,* as to the right to redeem, is put
just where it was *ante* the voidable foreclosure sale. The court
conceded in this case that the mortgagor, or any person claim-
ing under him in privity, may disaffirm the sale and redeem
in a reasonable time. How it can reconcile this concession with
the position that those claiming under the mortgagor in privity
cannot file such a bill within a reasonable time after the sale,
it is impossible for us to understand. The misconception of
the court is obvious. It is idle to speak of the right of those in
privity with the mortgagor to file a bill within a reasonable
time after the sale, and yet say that the right to redemption is
cut off by even such voidable sale. The fallacy of the reason-
ing is in holding that a voidable sale can ever, at all, have the
effect of finally and conclusively cutting off the right of re-
demption, and changing such equity of redemption, which was
an interest in the land, into a mere right to disaffirm. Such
voidable sale has no such conclusive effect, obviously. So far
as the equity of redemption is concerned, a voidable sale is no

sale at all, leaving such equity wholly unaffected, if the option to avoid it is seasonably exercised. It is in direct conflict with 84 Ala., 302 (4 So., 270), which supports our view, and the view of all other authorities we have seen. The court in that case says, at page 304, 84 Ala., and page 271, 4 So.: "But the rule is clearly settled to be otherwise where the mortgagee, when unauthorized, purchases at his own sale. Not that the sale, so long as it is permitted to stand, is ineffectual to cut off the equity of redemption; for such is, undoubtedly, its legal effect. But the court, construing the transaction as a fraud on the rights of a *cestui que* trust by the trustee, will set aside the sale at the request of the injured party, who files his bill to redeem within a reasonable time, offering to do equity. When the sale is thus set aside, the complainant's equity of redemption is restored to its original status, subject only to the lawful charges incident to redemption, but otherwise it is completely disembarrassed of the sale." This is the sound view, manifestly, and a multitude of authorities support this view, as can be seen by reference to 11 Am. & Eng. Enc. Law (2d ed.), pp. 214-224, inclusive—the text and the authorities in the notes. See, specially, sec. 3, p. 216, and authorities cited in it. The case of *Boarman* v. *Catlett,* 13 Smed. & M., at page 153, expressly sanctions the same view, the court saying: "The right extends to the judgment creditor, where the judgment constitutes a lien, and to an assignee." See specially, also, *Dickinson* v. *Burrell,* L. R., 1 Eq., 337; *McMahon* v. *Allen,* 35 N. Y., 403; *Marvin* v. *Inglis,* 39 How. Prac., 329— all cited at close of note to *Marshall* v. *Means,* 56 Am. Dec., 451. And see specially, also, the note and authorities in *Horn* v. *Bank* (Ind. Sup.), 21 Am. St. Rep., at pages 240, 246, 247 (s.c., 25 N. E., 558; 9 L. R. A., 676).

Counsel for appellees next contends that this is a bill to remove clouds from title, but this is an entire misconception of the bill.

Counsel finally contends that the appellant obtained by his

quitclaim deed only the assignment of a bare right to file a bill in equity for alleged fraud committed upon the assignor, and that this assignment is void, as against public policy, and as savoring of the character of maintenance.    Sections 2433 and 2438 of the code of 1892, and the case of *Cassedy* v. *Jackson,* 45 Miss., 397, dispose of this contention adversely to this view. This is not a mere right to file a bill to set aside a deed for fraud.    It is unlike *Crocker* v. *Bellangee,* 6 Wis., 645 (70 Am. Dec., 489), and the other cases on that line cited in note to *Marshall* v. *Means,* 56 Am. Dec., at page 449.    Crocker's case is cited in *McCall* v. *Mash,* 89 Ala., 487 (7 So., 770; 18 Am. St. Rep., 145), also.    Under the law in this state appellant got all the estate and right his assignors had, and could file this bill, since they could have done so.

We also think that the prayer of the bill that the appellees be required to pay the complainant the money it has received from Katharine and W. H. De Loach, the innocent purchasers for value without notice, and that such purchasers be required to make the further payments for the fifty-two feet off the east end of said lots sold to W. H. and Katharine De Loach, co-defendants herein, by appellees, to complainant, should be granted.    The mortgagee gets his debt, with all interest, and is not prejudiced.    Its sale, being avoided, is as to it avoided in *toto;* the rights of the innocent purchasers being fully protected.    A proper accounting should also he had.

*Decree reversed, and remanded to be proceeded with in accordance with this opinion.*