THE COMMERCIAL UNION ASSURANCE COMPANY

*v.*

J. YOUNG SCAMMON.

*Filed at Ottawa November 15, 1888.*

1. INSURANCE—*subsequent insurance by another, without right—effect as to rights under a prior policy.* The owner of premises, after having given a mortgage thereon, procured a policy of insurance on the property. Subsequently a sale was made under a power in the mortgage, and thereupon the purchaser at such sale, without the consent of the mortgagor, insured the premises in his own name, and on the destruction of the building by fire, collected the insurance money under his policy. On bill by the mortgagor, the sale was set aside, and an accounting had in respect to the money so received : *Held,* that this was no bar to a suit by the mortgagor to recover on his prior policy, for the loss.

2. SAME—*condition against alienation—construed—and herein, what constitutes an alienation.* A policy of insurance upon a house, including no personal property, provided that if the property be sold or transferred, or any change in title or possession should take place, either by

| | |
|---|---|
| 126 | 355 |
| 35a | 587 |
| 35a | 662 |
| 37a | 273 |
| 126 | 355 |
| 138 | 32 |
| 126 | 355 |
| 140 | 508 |
| 143 | 504 |
| 143 | 539 |
| 143 | 549 |
| 144 | 495 |
| 144 | 506 |
| 126 | 355 |
| 162 | 258 |
| 126 | 355 |
| 173 | 506 |
| 72a | 635 |
| 126 | 355 |
| 186 | 7495 |
| 126 | 355 |
| 200 | 581 |

judicial sale or voluntary conveyance, the same should be void. Another clause provided, that where property has been sold or delivered,, or otherwise disposed of, so that all interest or liability on the part of the assured has ceased, the insurance should immediately terminate: *Held*, that taking these clauses together, it was apparent that an alienation, to avoid the policy, must be such that all interest or liability of the assured has ceased.

3. In such a case, a sale of the property insured under a power in a deed of trust, which is voidable, and is afterward set aside, is not such an alienation of the property, within the meaning of the policy, as will avoid it.

4. A trustee under a mortgage containing a power of sale can not become a purchaser at his own sale, either directly, or indirectly, by procuring another to buy for his benefit, and if he does so become the purchaser, the right of the mortgagor will not be affected, and such a sale and conveyance will not constitute an alienation or disposition of the property, within the meaning of a clause in a policy of insurance declaring that a sale shall render the policy void.

5. The owner of premises gave a trust deed thereon, to secure a debt, after which he took a policy of insurance on the same, in which was a clause prohibiting the alienation of the property. The trustee, without the owner's consent, sold the property to another for his own benefit, the owner remaining in possession until after its loss by fire. The latter instituted suit to have the sale set aside, and for redemption: *Held*, that the existence of the trustee's deed at the time of the loss was not such an alienation as avoided the policy, within the meaning of such clause.

6. Same—*proofs of loss—waiver.* Where an insurance company, after notice of a loss, and with full knowledge of the facts, and before the expiration of the time for furnishing proofs of loss, resolves not to pay the loss, basing its refusal on a ground not well founded, and which is no defense, and informs the insured of its determination not to pay, this will amount to a waiver of the proofs of the loss.

7. Appeal—*final judgment in Appellate Court.* Where there is no evidence tending to prove the issues tendered by the defendant, so that the trial court would have been justified in directing the jury to find for the plaintiff, the Appellate Court may render final judgment for the plaintiff. Whether the record contains any evidence tending to establish a fact, is a question of law, for the court to decide.

8. Same—*presumption in support of judgment below.* This court will not presume anything in favor of a judgment of the trial court which has been reversed by the Appellate Court, but will presume, until the contrary is made to appear, that the action of the Appellate Court was right.

9. Where the Appellate Court reverses the judgment of the trial court, and certifies the facts found by it, we are to assume that it did so because it found the facts differently from the trial court. Whether such finding is correct, this court can not inquire.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Messrs. MILLER, LEWIS & JUDSON, for the appellant:

The new evidence was known to the appellee at the time of the first trial, and having failed then to put it in, he should be held estopped from using it on the second trial. *Hamilton* v. *Quimby*, 46 Ill. 90; *Rogers* v. *Higgins*, 57 id. 244; *Stockton* v. *Ford*, 1 Blackf. 360; 18 How. 418.

The purchase of property by a mortgagee at his own sale is not void, but voidable at the election of the mortgagor. *Gibbons* v. *Hoag*, 95 Ill. 45; *Harper* v. *Ely*, 56 id. 181; *Jenkins* v. *Pierce*, 98 id. 646; *McHany* v. *Schenk*, 88 id. 357; *Hewitt* v. *Clark*, 91 id. 605.

It is also well settled, that a sale which is merely voidable is such a change of title as defeats a recovery for a loss before the sale has been set aside. Wood on Fire Insurance, secs. 312, 315, 317; Flanders on Fire Insurance, p. 449; *Power* v. *Insurance Co.* 19 La. 28; *Worthington* v. *Bearse*, 12 Allen, 382; *Savage* v. *Insurance Co.* 52 N. Y. 502; *Langdon* v. *Farmers' Association*, 22 Minn. 193; *Foote* v. *Insurance Co.* 119 Mass. 259; *Insurance Co.* v. *Riker*, 10 Mich. 279; *Manufacturing Co.* v. *Insurance Co.* 10 Ohio St. 347.

The decision of this court reported in 102 Ill. 48, is conclusive on the parties everywhere. *Newberry* v. *Blatchford*, 106 Ill. 591; *Hollowbush* v. *McConnel*, 12 id. 203; *Reed* v. *West*, 70 id. 479; *Smith* v. *Brittenham*, 94 id. 624; *Rising* v. *Carr*, 70 id. 596; *Cook* v. *Norton*, 61 id. 285; *Ogden* v. *Larrabee*, 70 id. 510; *Moshier* v. *Norton*, 100 id. 74.

The appellee's failure to make proof of the loss was not waived, and is fatal to a recovery. *Scammon* v. *Insurance Co.* 101 Ill. 627; *Gould* v. *Insurance Co.* 80 id. 389; *Frank* v. *Insurance Co.* 29 Pa. St. 198; *Killips* v. *Insurance Co.* 28 Wis. 482.

Mr. WM. ALLEN BUTLER, also for the appellant.

Mr. CHARLES F. WHITE, and Mr. MARTIN L. WHEELER, for the appellee:

Special clauses against alienation or change of title in insurance policies are to be construed strictly. *Insurance Co.* v. *Spankneble,* 52 Ill. 53; *Insurance Co.* v. *Eddy,* 55 id. 213; *Lazarus* v. *Insurance Co.* 5 Pick. 76; *Strong* v. *Insurance Co.* 10 id. 43; *Stetson* v. *Insurance Co.* 4 Mass. 330; *Hoffman* v. *Insurance Co.* 32 N. Y. 405; *North Berwick Co.* v. *Insurance Co.* 52 Me. 336; 3 Kent's Com. 261.

Provisions in policies prohibiting alienation or change of title to the property insured, are construed strictly, and nothing but an absolute transfer of the entire interest of the insured will avoid the policy. *Courtney* v. *Insurance Co.* 28 Barb. 116; *Folsom* v. *Insurance Co.* 30 N. H. 231; *Onell* v. *Insurance Co.* 13 Gray, 431; *Insurance Co.* v. *Hayes,* 17 Ohio St. 432; *Norcross* v. *Insurance Co.* 17 id. 432; *Ayers* v. *Insurance Co.* 21 Iowa, 185; *Gridley* v. *Insurance Co.* 100 N. Y. 421; *Insurance Co.* v. *Halfenstein,* 48 Pa. St. 289.

Under a clause in a policy of insurance, that it shall become void upon an alienation of the property, or upon any sale, transfer or change of title, the giving of a mortgage, although the legal title is conveyed, is not an alienation or change of title. Jones on Mortgages, sec. 422; *Insurance Co.* v. *Spankneble,* 52 Ill. 53; *Jackson* v. *Insurance Co.* 23 Pick. 418; *Insurance Co.* v. *Eddy,* 55 Ill. 214; *Price* v. *Tower,* 1 Gray, 426; *Pelland* v. *Insurance Co.* 42 Me. 221; *Smith* v. *Insurance Co.* 50 id. 96; *Masters* v. *Insurance Co.* 11 Barb. 224; *Shepherd* v. *Insurance Co.* 38 N. H. 232; *Dutton* v. *In-*

*surance Co.* 9 Ford, (N. H.) 153 ; *Rollins* v. *Insurance Co.* 5 Fost. 200 ; *Folsom* v. *Insurance Co.* 10 id. 231 ; *Insurance Co.* v. *Bruner,* 23 Pa. St. 50 ; *Conover* v. *Insurance Co.* 3 Denio, 251.

So, also, it is held, generally, that a conveyance which equity will treat as a mortgage, does not terminate the interest of the insured, or render the policy void, under the alienation clause. *Holbrook* v. *Insurance Co.* 1 Curtis C. Ct. 199 ; *Hodges* v. *Insurance Co.* 8 N. Y. 416 ; *Titmore* v. *Insurance Co.* 20 Vt. 546 ; *Smith* v. *Insurance Co.* 50 Me. 96.

In accordance with this general rule of construction, the courts have uniformly held that a sale, transfer or change of title which does not cut off the right of redemption of the insured, does not avoid the policy, but that so long as he has the right to redeem, the policy will protect that right. *Loy* v. *Insurance Co.* 24 Minn. 315 ; *Stephens* v. *Insurance Co.* 43 Ill. 327 ; *Brogg* v. *Insurance Co.* 5 Fost. 289 ; *Cone* v. *Insurance Co.* 60 N. Y. 619 ; *Insurance Co.* v. *Graybill,* 74 Pa. St. 17 ; *Strong* v. *Insurance Co.* 10 Pick. 40.

The rule is well settled, that an insurance company may waive the right to object to a want of formal proofs of loss, or to imperfect proofs. *Insurance Co.* v. *Lewis,* 18 Ill. 553 ; *Transportation Co.* v. *Insurance Co.* 34 Conn. 561 ; *Insurance Co.* v. *Cary,* 83 Ill. 453 ; *McComas* v. *Insurance Co.* 56 Mo. 573.

So it is held, that where, by the policy, formal proofs are required, and the insurance company, after examination of the property, denies any liability, the company thereby waives the right to formal proofs of loss. *Transportation Co.* v. *Insurance Co.* 34 Conn. 561 ; *Insurance Co.* v. *Taylor,* 5 Minn. 492 ; *Warren* v. *Insurance Co.* 14 Wis. 318.

Such waiver may be inferred from acts evincing a recognition of liability, or a denial of obligation exclusively for other reasons. (*Insurance Co.* v. *Dougherty,* 102 Pa. St. 570.) And where notice of loss is given, and proofs are furnished, and the company makes objection to making payment, all grounds of objection that might be taken and are not, are considered

as waived, and the company can afterward insist only upon objections there taken. *Insurance Co.* v. *Lewis*, 18 Ill. 553, and cases there cited.

Mr. Justice Wilkin delivered the opinion of the Court:

At our March term, 1887, this case was before us on appeal from the Appellate Court for the First District. Two points were then made and urged as grounds of reversal, viz., change of title in violation of the conditions of the policy sued on, and failure to furnish proofs of loss. These were considered, and, under the facts found and certified by the Appellate Court, held insufficient to authorize a reversal, and the judgment of the Appellate Court was affirmed. A petition for rehearing being presented by appellant, it was then urged that the Appellate Court had no jurisdiction to render final judgment in the case, and also that a third point of controversy was in issue before the circuit and Appellate courts, viz., whether or not a certain other policy issued by appellant on the same property, to one Babcock, was issued in lieu of the one in suit, by consent of appellee. It being found that this last question was fairly in issue, and the Appellate Court having failed to find and certify the facts thereon, a rehearing was granted, and the case reconsidered. The jurisdiction of the Appellate Court to render final judgment was sustained, but the cause was remanded to that court with directions. (See 123 Ill. 601.) In pursuance of that decision, the Appellate Court, on the 3d of July, 1888, entered judgment *de novo* in favor of appellee, for $8910 and costs, and in conformity with directions, a full statement of the facts, on all the issues, was certified to, and made part of the record. Appellant again appeals.

The record is precisely the same as on the former hearing in this court, except that it now contains a finding of facts on the issue as to the substitution of the Babcock policy.

We have again considered all the questions involved in the case, and reconsidered the argument of counsel for appellant

on the first two issues, and find no reason to change the conclusion heretofore announced thereon and fully set forth in the opinion by Justice SCHOLFIELD filed prior to the rehearing, and on these questions that opinion is herewith re-filed and adopted.

It is again insisted that the Appellate Court erred in rendering final judgment, and it is argued that notwithstanding the power of that court to render such a judgment, as held in our former opinion,—123 Ill. 601,—it can only do so in cases where there is such a want of evidence on behalf of the defendant, as to justify a trial court in taking the case from a jury or direct a finding for the plaintiff. Here it is said there is evidence tending to sustain the defense of failure to furnish proofs of loss, and also that of the substitution of the Babcock policy for the one sued on. It is assumed that on this last issue we have already held that there is a conflict of evidence. If that assumption is based upon anything heretofore said, there is a misconception of our meaning, for in the opinion remanding the case to the Appellate Court, we expressly stated that we were not allowed to look into the record and find what the facts were.

While under sections 87 and 89 of the Practice act we have no authority to look beyond the finding of the Appellate Court to ascertain the facts, yet, as in case of the trial court having instructed the jury to return a verdict for the defendant, we may examine the bill of exceptions for the purpose of determining whether there is any evidence tending to prove the issue. What facts are established by the evidence the Appellate Court must find and certify, and its finding is conclusive. Whether or not the record contains any evidence tending to establish a fact, is a question of law, and which we must decide. In this view of the law, we have examined all the evidence bearing upon the questions involved, and given due consideration to the construction sought to be placed upon it by counsel in order to make it appear that there is such a conflict of testimony as to entitle the appellant to have the issues submitted

to a jury, and we are satisfied that by no fair and impartial consideration of all the evidence can it be held that such conflict exists.

The only remaining question to which our attention need be directed is, did the Appellate Court decide correctly on the facts found by it on the third point of contention above mentioned. On that defense the position of appellant is, that after the policy in suit was issued to appellee, and at a time when Babcock claimed to be the owner of the insured property, appellant issued its policy to him on the same property for the same amount, which last insurance was to be in lieu of that previously issued to appellee, and that such substitution was with the consent of appellee; that after the destruction of the insured property it paid the Babcock policy in full, and is therefore discharged from all liability on the one here sued on. On that issue the Appellate Court finds that such a policy was issued to Babcock, and on the assumption by appellant that the title to the insured premises was in Babcock, and that appellee, Scammon, had no title or interest therein; that on proofs of loss appellant paid said policy in full before this suit was brought; that said policy was not issued with the consent of appellee, Scammon, in lieu of the policy involved in this suit, but without his consent, upon the assumption by appellant that he had lost all title to the insured premises, which assumption was never, in any way, acquiesced in by appellee. Resting the decision of the Appellate Court upon this state of facts, there could be no pretense that it was erroneous. No one would seriously contend that on such a state of facts the rights of appellee could be defeated.

The Appellate Court further finds, that in a chancery proceeding in which a sale of the insured property to Babcock was set aside, said Babcock was required to account to appellee for the said amount of insurance received by him under his policy, and thereby appellee had the benefit of said sum, but that it was not "*claimed or received by Scammon as in lieu*

*of or in satisfaction of the claim on the policy now in suit."* Various theories are attempted to be advanced by counsel for appellant upon this finding, under which it is claimed that the payment of the Babcock policy should be held to discharge all liability on the one issued to appellee. None of them can be maintained. Appellee had nothing to do with the issuing of that policy. He made no claim of rights under it. He could have done nothing to enforce it. He was in no way bound by anything done by Babcock or the mortgage company. He in no legal sense ratified anything done by him or it in procuring the policy. All that he had a right to do, and all that he did do, was to ask a court of equity to require Babcock to account to him for any money actually received by him under his false claim of ownership. This, a court of chancery had full power to grant, without any reference to the facts and circumstances under which the policy had been issued, and wholly independent of the fact as to whether appellee consented thereto or not. As between the parties, it was sufficient for the chancellor to know that Babcock had actually received money, as rent, insurance money or otherwise, under a claim of ownership which was fraudulent and invalid, to authorize a decree requiring him to pay it over to the rightful owner. Had the Babcock policy been issued and paid by an entirely distinct company, appellee's right to demand, and the power of a court of chancery to require, the payment to appellee, would have been no more complete. Under the finding of facts by the Appellate Court, the two contracts of insurance are as distinct as though they had been issued by different companies, and as between appellee and appellant, the Babcock policy is no more available as a defense to this suit than if they had been so issued.

The decision of the Appellate Court, on the facts, is clearly right, and its judgment will be affirmed.

*Judgment affirmed.*

The following is so much of the opinion heretofore filed in this case, upon which a rehearing was granted, as is re-adopted by the foregoing opinion:

Mr. JUSTICE SCHOLFIELD:     *     *     *     *     *     *

Counsel for appellant contend, that it appears upon this record, as it did when the case was here before, that there was a breach of the clause against alienation.   The Appellate Court, in its opinion per Mr. Justice McALLISTER, 20 Bradw. 505, says on this question:

"First, then, as to the alleged breach of the condition of the policy against alienation.   What is to be taken as the true meaning, when the different clauses are construed together? All the authorities agree that such conditions must receive a strict construction, the court having in view the object of the insurance company in inserting them.   The language in which the condition in question is expressed, is as follows: 'If the property be sold or transferred, or any change takes place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, * * * in every such case this policy shall be void.   When property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, this insurance on said property shall immediately terminate.' When both the above clauses are considered together, in the light of the rules to which we have adverted, it appears to us that the last clause was intended to explain and qualify the meaning of the words of the former, and define what sort or nature of transfer or conveyance of the property and change of title was contemplated and provided against.   The character so given and intended was such a sale or disposition of the property as caused all interest of the assured in or control over the property to cease.   That was the construction given to clauses in the same language, by the Court of Appeals of New York, in *Browning* v. *Home Ins. Co.* 71 N. Y. 513.

"In *Ayres* v. *Hartford Ins. Co.* 17 Iowa, 176, the court, in discussing what transfer or change of title would avoid the policy, held to the following sensible views: 'The object of the insurance company by this clause is, that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or less interest and watchfulness in guarding and preserving it from destruction by fire. Any change in or transfer of the interest in the property, of a nature calculated to have this effect, is in violation of the policy. But if the real ownership remain the same,—if there is no change in the fact of a title, but only in the evidence of it, and this latter change is merely nominal, and not of a nature calculated to increase the motive to burn or diminish the motive to guard the property from loss by fire,—the policy is not violated.'

"*Loy* v. *Home Ins. Co.* 24 Minn. 315, supports the same doctrine, and many other cases of the same import might be cited. The case of *Orrell* v. *Hampden Fire Ins. Co.* 13 Gray, 431, is in harmony with the same principles, for it holds that to constitute a breach of the condition of insurance relating to the conveyance of the property, there must have been an *actual* sale or transfer of the property, *valid* as between the parties. There is a vein of the same doctrine in *Daily* v. *Westchester Fire Ins. Co.* 131 Mass. 113. May on Insurance, sec. 273."

But counsel for appellant say, that the two clauses of the policy thus brought together by the Appellate Court have no connection with each other,—that the latter clause relates exclusively to personal property. But it does not appear, here, that there is any specific insurance on personal property. The insurance is, "Five thousand dollars on the four-story and basement brick building, with metal roof, including steam heating and hoisting apparatus, if any." The fixtures included appear to be such, only, as savor of the realty, and would therefore pass with a conveyance of the building. There

is, it will be observed, no mention made of personal property, and although the words, "sold and delivered," would seem to be more applicable to personal than to real property, yet when they are used with reference to real property, we have no difficulty in knowing what was intended. Reading the two clauses together, the conclusion is inevitable that it was intended that an alienation of the property, to avoid the policy, must be such that all interest or liability on the part of the assured therein named has ceased.

Bearing in mind that the manifest purpose of the clause is, as said by the Supreme Court of Iowa in the clause quoted from the opinion of the Appellate Court, *supra*, "that the interest shall not change so that the assured shall have a greater temptation or motive to burn the property, or less interest and watchfulness in guarding and preserving it from destruction by fire," it is difficult to perceive how the insured whose property has been illegally sold, and who is entitled to have the sale declared void, occupies a different position than that occupied by him who owns a mere equity of redemption. This court held, in *Roberts* v. *Fleming et al.* 53 Ill. 196, a trustee under a mortgage containing a power of sale can not become a purchaser at his own sale, either directly or indirectly, by procuring another to purchase for his benefit; and if he does so become the purchaser, the rights of the mortgagor will remain precisely the same as though no sale had been made. The Appellate Court finds that such were the facts here, and so the interest of the insured remained, notwithstanding the sale, precisely as it was before.

In *Stephens* v. *Illinois Mutual Fire Ins. Co.* 43 Ill. 327, there was insurance obtained by a mortgagor. The mortgage was foreclosed under an agreement that the mortgagor should have two years from the date of sale in which to make redemption, the decree itself, however, only providing for the statutory redemption. The property was destroyed by fire fourteen months and eight days after the sale. It was held the mortgagor had

an insurable interest. The court said: "Notwithstanding, then, the decree directed a deed to be made at the end of fifteen months, it was the undoubted intention of the parties that the defendant should have two years for redeeming, and notwithstanding the commissioner's deed, if the defendants in that suit had tendered the redemption money to the complainants within the two years, and in case of refusal had filed their bill, there can be no question, on the proof in this record, but that they would have been entitled to a decree for redemption. * * * The legal title passed by the commissioner's deed, which was not made known till after the fire, but that legal title was held by the complainants subject to a right of redemption within two years from the sale. * * * It is objected for the defendant in error that the insurance company was no party to the agreement to extend the redemption for two years, and can not, therefore, be affected by it. The objection, however, is not tenable. The insurance company is sued on a policy. It defends by saying that the plaintiff, though he once had an insurable interest, has lost it through the foreclosure of a certain mortgage older than the plaintiff's title. Now, whether the plaintiff has lost his title must depend on the proceedings in the foreclosure and sale. To determine this question these proceedings are put in evidence, and on examining them we find this agreement as a very material portion of that transaction, which the company has itself introduced to show a divestiture of title. The company seeks to show that the right of redemption was lost under a judicial sale, but the evidence offered by it shows it was not lost." And in *Aurora Fire Ins. Co.* v. *Eddy*, 55 Ill. 219, when the property was insured, Eddy was only the owner of the equity of redemption, (Town then holding a mortgage on the premises,) and the loss, if any, was payable to Town, as his interest might show. Subsequently, the insured (Eddy) conveyed the premises, with other property, to Brown, and he, at the same time and as a part of the same transaction, gave back to Eddy

a defeasance. This arrangement was made to enable Eddy to take up his mortgage to Town, which was done. It was held that this conveyance and defeasance only constituted a mortgage, and did not constitute an alienation of the property.

It is, however, contended that a sale which is merely voidable is such a change of title as defeats a recovery for a loss before the sale has been set aside, and this is claimed to be sustained by Flanders on Fire Insurance, 406, and Wood on Fire Insurance, sec. 513. The language of Flanders is: "And where property was sold under a decree of the court, and after a loss had occurred the sale was set aside, it was held that the insured could not recover." He refers to *Mt. Vernon Manf. Co.* v. *Summit Mutual Fire Ins. Co.* 10 Ohio St. 347, *Power* v. *Ocean Ins. Co.* 19 La. 28, and *Dadmun Manf. Co.* v. *Worcester Mutual Fire Ins. Co.* 11 Metc. 429. In the first of these cases, the point decided is thus stated in the syllabus: "Where personal property insured against loss by fire in a mutual insurance company, is sold by a master in chancery, in pursuance of a decree upon a mortgage given by the assured, and the proceeds of such sale are, by order of the court, applied to the satisfaction, *pro tanto*, of such decree, and the property insured is afterwards burned, the assured can not recover for the loss, although subsequently to such loss, and before the commencement of the action on the policy, the sale was, by consent of all parties thereto, set aside by order of the court under whose decree the sale was made." This is the reasoning of the court in its opinion, on page 364: "But two reasons are stated in the order for setting aside the sale: First, that the purchase money has not been paid; and second, that all parties consented thereto. The first reason could have no application to the sale of the personal property, for, there being no occasion for the payment of the purchase money as to it, its non-payment could afford no reason for setting it aside. The consent of all parties may have been a good reason to justify the action of the court in setting aside the sale as to those parties,

but we can not rid ourselves of the impression that such action of the court, based upon and obedient to the will of parties, ought not to be permitted to affect the rights, previously fixed, of persons who were not parties, and whose interests were not consulted in the matter. It ought not to be in the power of the plaintiff, or of parties similarly situated, to escape the burden of assessments in case the injured property remained unscathed, and to insist on compensation in case of its destruction, at their mere will and pleasure."

In *Power* v. *Ocean Life Ins. Co.* it was merely decided that where the assured sells property covered by the policy, and afterwards takes it back on account of the non-payment of her vendee, and is in possession at the happening of the loss, she will recover, although a clause in the policy provides that it shall be void in case of transfer or assignment without the consent of the insurers. The court, speaking of the clause against alienation, says, on page 31: "The nullity mentioned in the clause relied on by defendants was, in our opinion, intended and understood by the parties for the case, where, by sale or otherwise, an absolute transfer or termination of the interest of the insured should take place so as to leave him without interest at the time of the loss."

In *Dadmun Manf. Co.* v. *Worcester Mutual Fire Ins. Co.* the only point decided having any relevancy is, that a corporation having made a conveyance in violation of a clause in an insurance policy against alienation, can not be heard to say that such conveyance is void because fraudulent as to creditors.

Wood says: "A sale of premises or other property that is void from any cause, is not an *alienation*, within the meaning of the term as employed in the prohibitory clause of a policy, but a sale that is merely voidable is an alienation that defeats a recovery for a loss occurring before the sale has been set aside." And he refers to *Worthington* v. *Bearse*, 12 Allen, (Mass.) 382; *Lane* v. *Maine Ins. Co.* 13 Maine, 44; *Power* v.

*Ocean Ins. Co. supra; Hooker* v. *Hudson River Ins. Co.* 17 N. Y. 424; *West Branch Ins. Co.* v. *Halfenstein,* 40 Pa. St. 289.

This is the syllabus in *Worthington* v. *Bearse:* "If a mortgagor of a vessel sells his remaining interest therein, with a stipulation that he will pay off the mortgage, and fails to comply with this stipulation, and the bargain is accordingly given up and the title reconveyed to him, a policy of insurance issued to him before his agreement of sale will be valid to cover a loss of the vessel after the reconveyance of the title to him."

In *Lane* v. *Maine Mutual Fire Ins. Co.,* which is reported in 3 Fairfield, 44, the point pertinent here is thus stated in the syllabus : "In a policy of insurance against fire, it was stipulated that 'when the property insured should be alienated, by sale or otherwise, the policy should thereupon be void.' The insurance was on a store, and $200 on the stock of goods therein, for six years. During the existence of the policy, the assured sold all the goods and leased the store by parol to the purchaser, who continued to occupy the same, selling the goods, for about six months, when the assured took back both the store and the remaining stock of goods : *Held*, that this was not an alienation of the store within the meaning of the policy."

What is decided in *Power* v. *Ocean Ins. Co.* has been already shown. *Hooper* v. *Hudson River Ins. Co.* has no bearing on the question. It decides, only, that application to an insurer for his consent to the assignment of a policy, is notice that the applicant has acquired, or is about to acquire, some interest in the subject of insurance, since without such interest an assignment would be valueless to him.

The only point decided in *West Branch Ins. Co.* v. *Halfenstein,* that has any pertinency to the text in support of which it is cited, is : "In a policy obtained by a merchant upon his storehouse, and upon his stock of goods therein, each for a certain sum, there was a condition that in case of any transfer, partial transfer or change of title in the property insured, such

insurance shall be void and of no effect, etc. He afterwards sold a part of his stock, without notice to or consent of the company, and leased the lower story of his store to the purchasers, occupying himself the second story and the cellar with the balance of his stock, which, at the time of the fire, exceeded in value the insurance obtained on his goods : *Held,* that he had not forfeited his right to indemnity by failing to give notice of the partial sale, but was entitled to recover the amount of his insurance, it being upon merchandise, which is to be used for traffic and commerce, and not as property to be kept unchanged. The admission, under lease, of the purchasers of part of the stock, to the joint possession of the store building, was not a breach of the covenant, for the condition forbidding the transfer or change of *title* in the property insured, without the assent of the company, does not include a lease which changes only the possession."

Counsel for appellant cite, on the same point, in addition to the foregoing, *Savage* v. *Howard Ins. Co.* 52 N. Y. 502 ; *Langdon et al.* v. *Minnesota Farmers' Association,* 22 Minn. 193 ; *Foote* v. *Hartford Fire Ins. Co. et al.* 119 Mass. 259.

In *Savage* v. *Howard Ins. Co.* it was held, where a policy of insurance contains a condition that if the property be sold or transferred, or any change takes place in the title or possession, then the policy shall be void, a conveyance of the property avoids the policy, although simultaneously therewith a mortgage be taken back for the purchase money. This is directly in opposition to our ruling in *Aurora Fire Ins. Co.* v. *Eddy, supra.*

In *Langdon* v. *Minnesota Farmers' Association,* where, by the terms of a fire policy, the sale or transfer of the insured premises, or a change in the title thereof by voluntary transfer or conveyance, cuts off all right of recovery upon the policy, a conveyance of the premises by the insured and his wife to S., who reconveys to the wife, it was held operates to cut off such right of recovery, notwithstanding it appears that the convey-

ances were made as a substitute for a will devising the property to the wife, and that it was not the intention to divest the insured of the entire title, but that he was to retain, and did retain, possession and control of the property after the conveyances as before.

The ruling in *Foote* v. *Hartford Fire Ins. Co.*, so far as affects the present question, is analogous to that in *Savage* v. *Howard Fire Ins. Co.*, and is not more pertinent to the present question.

Not one of these cases, it will thus be seen, is analogous to the present case. In none of them is it held that a voidable deed, made by direction of a court or by a master in chancery, where the assured still has possession and the same interest in the property that he had before such deed was made, constituted an alienation of the property, within the meaning of the clause under consideration.

It may be conceded that there is strong reason in favor of holding, where a party has himself made a deed which he may avoid or not, as he shall elect, and a loss has occurred after he has made such deed and before he has elected to avoid it, that such an alienation, under a clause like that under consideration, avoids the policy, and especially so where there are interests urging against its avoidance on the one side, as well as in favor of its avoidance on the other. But these reasons have no application here. Under the facts found by the Appellate Court, the case here, in brief, is simply this: A trust deed is made of property to secure a debt. Afterwards, the maker of the deed takes out a policy of insurance upon the same property, in which there is a clause prohibiting its alienation. The trustee, without his consent, and against his protest, sells the property to the *cestui que trust*. The maker of the trust deed is in possession when the deed is made, and remains in possession until after the sale, and until the property is destroyed by fire. He denies the validity of the sale, and asserts his right of possession and of ownership, and, within a reasonable time, institutes legal proceedings to set the sale aside.

As to him, the sale is void, and he is entitled to redeem, notwithstanding the sale, and his interest since the sale is therefore just as great as it was before. The same motives which can be presumed to have urged him to protect the property and preserve it from destruction before the sale, urge him to protect and preserve it from destruction after the sale. The facts found place the value of the property at four times the amount bid for the property at the sale, and there is no question of over-valuation for the purpose of the insurance. In our opinion, it must follow that the deed of the trustee was not such an alienation as is within the reasonable contemplation of the clause under consideration.

The judgment is affirmed.

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in this decision.