# THE NIAGARA FIRE INSURANCE COMPANY

*v.*

## ARIANNA E. SCAMMON.

*Filed at Ottawa, October 31, 1891.*

1. INSURANCE — *condition against alienation of the property insured — invalid sale will not avoid policy.* Under a clause in a policy of insurance of a building against loss by fire, that any sale, transfer or change of title in the property, or foreclosure of a mortgage, shall avoid the insurance, a merely voidable sale will not constitute such an alienation or change of title as will defeat a recovery of a loss accruing before the sale is set aside, when the assured has done nothing to ratify such sale.

2. A voidable deed made by direction of a court, or by a master in chancery, or under a power, where the insured still retains possession, and has the same interest in the property that he had before the making of such deed, does not constitute an alienation of the property within the meaning of a clause in a policy of insurance against any sale or change in the title of the property insured.

3. A trustee under a mortgage containing a power of sale can not become a purchaser at his own sale, either directly or indirectly, by procuring another to purchase for his benefit, and·if he does so become the purchaser, the rights of the mortgagor will remain precisely the same as though no sale had been made, and such sale will not defeat his rights under a policy of insurance against loss of the mortgaged premises by fire, which declares that any sale, etc., shall defeat the insurance.

4. SAME — *alienation that will avoid policy.* An alienation or change of title that is made without the act or consent of the insured will not create a breach of a condition in a policy against a sale or change of title,

unless there has been an actual sale or alienation of the property that is valid against the insured.

5. SAME — *right to insist on a forfeiture — burden of proof.* The right of the insurer to insist upon a forfeiture under a clause in the policy against alienation or change of title is *stricti juris*, and such right must be brought clearly within the forfeiting clause. The burden of proof is upon the insurance company to establish a valid and not a voidable sale, or one which divests the title of the assured and leaves him no insurable interest.

6. SAME — *clause against other insurance — construed.* A condition in a policy of insurance provided that, " if the assured or any other person or parties interested " shall have existing, during the continuance of this policy, any other contract or agreement for insurance, whether valid or not, against loss," etc., on the property, or any part thereof, " not consented to by this company in writing," then this insurance shall be void: *Held*, that an insurance taken out by a third party on what he claimed an insurable interest, and who had no interest in the original policy could not affect the rights of the assured under the first policy.

7. The designation, " any other person or parties interested," in such a condition, includes only persons or parties interested in the insurance merely; and the words " any other contract or agreement for insurance " do not apply to insurance procured by a third person without the knowledge and consent of the assured, such third person claiming an insurable interest in the property, and having no interest in the policy issued to the assured.

8. SAME — *clause for apportionment of loss between different companies.* A clause in a policy of insurance that, if there shall be other insurance upon the property, the insured shall receive of the company in case of a loss no greater portion of the loss sustained than the amount therein insured shall bear to the whole amount of such contracts for insurance, applies only to cases where the several insurances cover the same interest, and not to a case where the second insurance is upon a different interest claimed in the property.

9. The fact that the party first insuring files his bill to set aside an invalid sale of the property, on which the sale is set aside as fraudulent, and the purchaser is declared a trustee *ex maleficio*, and required to account to the complainant for the insurance money received on a second insurance, will not constitute a ratification of the second insurance, so as to require an apportionment of the loss between the two insurance companies.

10. The mortgagor of property insured the same in the sum of $5000, after which an invalid sale thereof was made under a power, and the purchaser, who was also the seller, insured his interest in the property for a like sum in another company. The mortgagor filed his bill against such purchaser, under which the sale was set aside and a redemption allowed, and the purchaser was required to account to the mortgagor

for the insurance money paid him on the loss of the property: *. Held*, in an action by the mortgagor on his policy of insurance, that the defendant company was not entitled to any deduction for the money received on the second insurance under a clause for apportionment.

11. SAME — *of the alienation which will defeat a recovery for a loss.* The rule laid down by Wood on Insurance to the effect that a sale, which is merely voidable, is such an alienation as will defeat a recovery for a loss occurring before the sale is set aside, is not correct when applied to an involuntary sale, such as a sale under a power contained in a mortgage or deed of trust, otherwise an insurance company might take advantage of the illegal act of a third party to avoid its liability when the insured has been guilty of no wrong or negligence whatever.

12. CONTRACT AND SALE — *when void, and when voidable.* A contract is void when it is without any legal effect, and voidable when it has some effect, but is liable to be made void by one of the parties, or a third person. These definitions are also applicable to sales and other acts which may be void or voidable.

13. A sale of property under a power contained in a mortgage which is voidable, at the instance of the mortgagor, becomes absolutely void when set aside by a decree of a court of competent jurisdiction, and such sale becomes void *ab initio*.

14. SALE — *voidable — void from what date.* A transaction which is capable of being rescinded on the ground of fraud or irregularity is to be treated as good until rescinded, and not as bad until confirmed, but the agreement or sale is not to be considered as rescinded only as of the date of the decree of the court setting the same aside, but as of the date of the unequivocal, open declaration of the injured party that he demands a rescission, followed, upon refusal, by a prompt application to the court.

15. So, when the validity of a sale under a power in a mortgage is promptly denied by the mortgagor, and he continues in possession asserting his continued ownership, and he takes prompt steps by which he has the sale set aside, but the premises are destroyed by fire before the decree setting the sale aside, the sale will be held as void from the beginning, and will not defeat a recovery by him of the loss, from the insurance company.

APPEAL from the Appellate Court for the First District; — heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Mr. HENRY C. MILLER, for the appellant:

Under the condition of the policy a change of title to the property insured terminated the risk. The person succeeding

to the title of the assured can, by reason of such title, though fraudulently acquired, take out insurance upon the property which he may collect. *Phenix Ins. Co.* v. *Mitchell*, 67 Ill. 43; *Savage* v. *Howard Ins. Co.*, 52 N. Y. 504; *Dix* v. *Ins. Co.*, 22 Ill. 272.

The change of title by the sale and conveyance under the mortgage defeated the insurance. *Home Mutual Ins. Co.* v. *Hamiline*, 60 Ill. 521; *Langdon* v. *Ins. Co.*, 22 Minn. 193; *Foote* v. *Ins. Co.*, 119 Mass. 260; *Hitchcock* v. *Ins. Co.*, 26 N. Y. 68.

The sale to Babcock through Rees was not void, but voidable only. *Roberts* v. *Fleming*, 53 Ill. 193; *Gibbons* v. *Hoag*, 95 id. 46; *Farrar* v. *Payne*, 73 id. 86; *McHaney* v. *Schenck*, 88 id. 358; *Hamilton* v. *Lubukee*, 51 id. 415; *Harper* v. *Ely*, 56 id. 193; *Mulvey* v. *Gibbons*, 87 id. 368; *Hewitt* v. *Clark*, 91 id. 605; *Munn* v. *Burges*, 70 id. 604.

Mr. CHARLES F. WHITE and Mr. MARTIN L. WHEELER, for the appellee:

No change of title to the premises had at the time of the fire taking place within the meaning of the policy. *Ins. Co.* v. *Scammon*, 126 Ill. 364; *Ayres* v. *Ins. Co.*, 17 Iowa, 176; *Loy* v. *Ins. Co.*, 24 Minn. 315; *Orvell* v. *Ins. Co.*, 24 id. 315; *Jackson* v. *Ins. Co.*, 16 B. Mon.; *Stephens* v. *Ins. Co.*, 43 Ill. 327; *Aurora F. Ins. Co.* v. *Eddy*, 55 id. 219; *Ross* v. *Demoss*, 45 id. 452; *Roberts* v. *Fleming*, 53 id. 200.

The policy was not avoided by the second insurance. May on Ins. 558, sec. 372; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385; *Ins. Co.* v. *Howe*, 2 N. Y. 235; *Acer* v. *Ins. Co.*, 57 Barb. 68.

A provision for apportionment of the loss in case of other insurance only applies to insurance covering the same interest. If the mortgagor and mortgagee each has separate insurance, the condition for apportionment does not apply. *Fox* v. *Phœnix Ins. Co.*, 52 Me. 333.

A policy made by the mortgagor to cover the interest of the mortgagee, without his knowledge or consent, is not other insurance. *Johnson* v. *N. British Ins. Co.*, 1 Holmes (U. S. C. C.), 117.

The assured can not be chargeable for the acts of a third person over whom he has no control. *Carpenter* v. *Prov., etc., Ins. Co.*, 16 Pet. 501; *Ætna F. Ins. Co.* v. *Tyler*, 12 Wend. 385; *Acer* v. *Merchants' Ins. Co.*, 57 Barb. 68; *Pitney* v. *Glens Falls Ins. Co.*, 61 Barb. 385; *Nichols* v. *Fayette Mut. F. Ins. Co.*, 1 Allen, 63; *Burbanks* v. *Rockingham, etc., Ins. Co.*, 24 N. H. 550.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This suit was upon a policy of insurance for $5000, issued by appellant to the testator of appellee, insuring a building in the city of Chicago against loss or damage by fire. At the time the policy was issued the insured premises, with other contiguous property and the buildings thereon, were encumbered by a mortgage for $220,000 to the United States Mortgage Company; for default in the payment of an interest coupon, the mortgage company in February, 1874, declared the whole amount secured by the mortgage due, and assumed to advertise and sell the whole of the mortgaged premises under a power contained in the mortgage. The sale took place on March 31, 1874, between two and three months after the above mentioned insurance policy was issued, and the mortgaged premises were struck off to one James H. Rees, and a deed therefor executed to him. On April 20, 1874, Rees made a deed for all of the property to Samuel D. Babcock, the president of the mortgage company. J. Young Scammon, the testator of appellee, remained in actual possession of all the mortgaged premises, and claimed to be owner, and refused to acquiesce in the alleged mortgage sale, and insisted that the sale was illegal and did not amount to anything and that he would disregard it, and notified Babcock and his attorneys that he would proceed to

set said sale aside. While this was the condition of affairs, and on July 14, 1874, the insured property was destroyed by fire. Thereafter, said Scammon filed his bill to set aside the alleged foreclosure sale, and such proceedings were had in that suit, that in March, 1886, a decree was entered therein setting aside said sale and permitting him to redeem from the mortgage. It was also ordered by the decree that Babcock should account to Scammon for any insurance moneys he had collected on account of the mortgaged buildings.

The principal contention of the appellant is that the sale and conveyance to Rees, and the subsequent deed of Rees to Babcock, constituted a change of title within the meaning of the clause in the policy of insurance relating thereto, and that consequently the policy was not in force at the time of the loss.

The building covered by the policy in this case was contiguous to the building insured by the policy in litigation in the case of *The Commercial Union Assurance Company* v. *Scammon*, 126 Ill. 355, and both buildings were destroyed by the same fire. Both buildings and the lots on which they stood were portions of the premises covered by the mortgage at issue in that case. The chancery proceeding and decree that were considered in that case also embraced the premises that are in question here. It is urged, however, that the decision of the court in that case is not applicable to the case now in hand, because the language in respect to alienation of the policy involved in that case is different from the language used in the clause of the policy respecting alienation here in question.

In the Commercial Union Assurance Company policy the language in which the condition was expressed was as follows: "If the property be sold or transferred, or any change takes place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance,  *   *   *   in every such case this policy shall be void. When property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named

has ceased, this insurance on said property shall immediately terminate." The policy upon which this action is brought contains the following provision: "In case of any sale or transfer, or change of title in the property insured by this company, or of any undivided interest thereof, or the entering or foreclosure of a mortgage,  \*  \*  \*  this insurance shall immediately cease."

Excluding from consideration said second clause, contained in the policy issued by the Commercial Union Assurance Company, it is manifest that the provisions in the two policies in regard to a sale or transfer of the property or change in the title thereto, are substantially the same. The existence of said second clause was one of the circumstances in that particular case, and was taken into consideration in its decision. It was held that the two clauses should be considered together, that the second clause was intended to explain and qualify the meaning of the words of the first clause, and define what sort or nature of transfer or conveyance of the property and change of title was contemplated and provided against. We there said: "Reading the two clauses together, the conclusion is inevitable, that it was intended that an alienation of the property, to avoid the policy, must be such that all interest or liability on the part of the assured therein named, has ceased." The decision was, to some extent, based on the phraseology of said second clause, but we do not understand that said clause was of controlling importance and essential to the judgment that was rendered.

The contention of the then appellant was, that a sale that is merely voidable is an alienation or change of title that defeats a recovery for a loss occurring before the sale has been set aside. It was conceded by the court, that where a party has himself made a deed which he may avoid or not, as he shall elect, and a loss has occurred after he has made such deed and, before he has elected to avoid it, there is strong reason in favor of holding that such an alienation, and especially under

some circumstances, will avoid a policy under a clause against a sale, transfer or change of title. But the cases relied upon by said appellant as establishing its contention were critically examined, and we there said : " In none of them (the cases) is it held that a voidable deed, made by direction of a court or by a master in chancery, where the assured still has possession and the same interest in the property that he had before such deed was made, constituted an alienation of the property, within the meaning of the clause under consideration."

In the same case, we quoted with approval from the opinion of the Supreme Court of Iowa, in *Ayres* v. *Hartford Ins. Co.*, 17 Iowa, 176, this language : " But if the real ownership remain the same ; if there is no change in the fact of a title, but only in the evidence of it, and this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not vitiated." And in the same case we said : " It is difficult to perceive how the insured, whose property has been illegally sold, and who is entitled to have the sale declared void, occupies a different position than that occupied by him who owns a mere equity of redemption. This court held, in *Roberts et al.* v. *Fleming et al.*, 53 Ill. 196, a trustee, under a mortgage containing a power of sale, can not become a purchaser at his own sale, either directly or indirectly, by procuring another to purchase for his benefit ; and if he does so become the purchaser, the rights of the mortgagor will remain precisely the same as' though no sale had been made. And so, here, the interest of the insured remained, notwithstanding the sale, precisely as it was before."

In the same case we said, the case here, in brief, is simply this : " A trust deed is made of property to secure a debt. Afterwards, the maker of the deed takes out a policy of insurance upon the same property, in which there is a clause prohibiting its alienation. The trustee, without his consent, and against his protest, sells the property to the *cestui que trust*.

The maker of the trust deed is in possession when the deed is made, and remains in possession until after the sale, and asserts his right of possession and of ownership, and within a reasonable time institutes legal proceedings to set the sale aside. As to him, the sale is void, and he is entitled to redeem, notwithstanding the sale, and his interest since the sale is just as great as it was before. The same motives which can be presumed to have urged him to protect the property and preserve it from destruction before the sale, urge him to protect and preserve it from destruction after the sale."

The legal principles upon which the decision in *The Commercial Union Assurance Company* case was based, were two. *First*, The principle announced in numerous former decisions of this court, that a trustee, under a mortgage containing a power of sale, can not become a purchaser at his own sale, either directly or indirectly, and that if he does so become the purchaser, and there has been no ratification of the sale by the mortgagor, the rights of the mortgagor will remain precisely the same as though no sale had taken place. *Second*, That an alienation or change of title, that is made without the act or consent of the insured, will not create a breach of a condition in a policy against a sale or change of title, unless there has been an actual sale or alienation of the property that is valid against the insured.

This being so, the present case falls within the rule announced in *The Commercial Union Assurance Company* case and is governed by it.

There appellee's testator held only an equity of redemption in the insured premises when the policy of insurance was taken out, and notwithstanding the sale and subsequent deeds he still continued to be the owner of said equity of redemption, and " his rights remained precisely the same as though no sale had been made." The right to insist upon a forfeiture under a clause against alienation or change of title is *stricti juris*, and such right must be brought clearly within the for-

feiting clause.    *Aurora Fire Insurance Co.* v. *Eddy*, 55 Ill. 213.    Such a clause is couched in language of the insurance company's own selection, and its tendency is to narrow and limit the obligation of the company and defeat the indemnity which it was the purpose of the assured to obtain.    The burden of proof was upon appellant to establish that there had been a change of title that was valid as against the insured.    This it did not do.    The sale that appears in the record was made without the consent of Scammon, and he expressly repudiated it and remained in possession of the premises, claiming to be owner.    The sale, without a ratification of it by Scammon, was invalid, and he never ratified it by acquiescence or otherwise.

It is urged, that several months before the loss Babcock took out a policy for $5000 upon the property here in question, in the Commercial Union Assurance Company, to which the appellant company never consented, and that the risk covered by this policy was thereby terminated.    The provision of this policy involved in behalf of this claim is as follows : "If the assured or any other person as parties interested shall have existing during the continuance of this policy any other contract or agreement for insurance (whether valid or not), against loss or damage by fire on the property hereby insured or any part thereof, not consented to by this company in writing, and mentioned in or endorsed upon this policy, then this insurance shall be void and of no effect."    Babcock, at the time he procured his policy, claimed an insurable interest in the property, and he did not have, and never had any interest in the policy now in suit.    The designation, "any other person or parties interested" includes only persons or parties interested in the insurance merely.    *Acer* v. *Merchants' Ins. Co.*, 57 Barb. 68. The expression, "any other contract or agreement for insurance," found in this policy, does not apply to insurance procured by a third person, without the knowledge and consent of the assured, said third person having or claiming an insur-

able interest in the property and no interest in the policy issued to the assured.    May on Insurance, secs. 365, 372 ; 2 Wood on Insurance, sec. 377 ; *Ætna Ins. Co.* v. *Tyler,* 16 Wend. 385 ; *Mutual Safety Ins. Co.* v. *Howe,* 2 N. Y. 235 ; *Burton* v. *Gore Dist. Ins. Co.,* 17 N. C. (Q. B.) 342.    We think that the policy in suit was not terminated by the issuance of the subsequent policy to Babcock.

It appears from the evidence that the loss upon the property covered by this policy was $6500, and that the insurance upon the premises destroyed was $10,000, *i. e.,* $5000 insured by the Scammon policy, and $5000 insured by the Babcock policy. It is claimed that it was error in the trial court to refuse to hold as law applicable to the case the following proposition : " It appearing from the evidence that the amount of insurance upon the property described in the policy at the time of the loss was $10,000, and that the policy in suit was for $5000, the plaintiff can not, in any event, recover in this action more than one-half of such loss."    Said proposition of law was predicated upon a provision contained in the policy sued on, that " if there shall be other insurance upon the property, the insured shall not be entitled to demand or recover of this company any greater portion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount of such contracts or agreements for insurance."

It is to be noted that the provision for an apportionment is only to become operative " if there shall be other insurance upon the property."    And as we have seen, insurance which is obtained by a third person and upon another distinct and insurable interest can not be regarded as " other insurance." We understand the rule to be, that a provision for apportionment of loss, if there is other insurance, applies only to cases where the insurance covers the same interest.

It is suggested, however, that the insurance to Babcock was, at the instance of Scammon, decreed by the Court of Chancery to have been an insurance of the trustee of Scammon, and of

which Scammon had the benefit, and that it was an insurance of the property within the meaning of this clause in the policy, as much so as it would have been if the policy had been issued to Scammon instead of Babcock. This claim proceeds upon the assumption that the relation of Babcock to Scammon was that of an express trustee, created by voluntary act, but it appears from the record and the decree that he was found by the Chancery Court to be a trustee *ex maleficio* for Scammon, and it was held that he could make no profit from his own wrongful act. In *Commercial Union Assurance Company* v. *Scammon, supra,* we had under consideration a policy of insurance issued to Scammon, and a subsequent policy on the same property issued to Babcock, and in speaking of the latter policy we said: " Appellee had nothing to do with the issuing of that policy. He made no claim of rights under it. He could have done nothing to enforce it. He was in no way bound by anything done by Babcock or the mortgage company. He in no legal sense ratified anything done by him, or it, in procuring the policy. All that he had a right to do, and all that he did do, was to ask a court of equity to require Babcock to account to him for any money actually received by him under his false claim of ownership. * * * As between the parties, it was sufficient for the chancellor to know that Babcock had actually received money as rent, insurance money or otherwise, under a claim of ownership which was fraudulent and invalid, to authorize a decree requiring him to pay it over to the rightful owner." This language seems to be applicable to the case at bar, and to the particular matter now under consideration.

Babcock, at the time of the issuance of the Commercial Union Assurance Company policy, which is at issue in this case, and at the time of the loss, had an insurable interest. Said company paid the loss to him. It would seem that neither the taking out of that insurance, nor the payment of that loss would, under any of the provisions contained in the prior policy issued by appellant to Scammon, either invalidate the

insurance of Scammon or lessen the amount due him under the terms of his policy. Afterwards, the Court of Chancery found that Babcock was a trustee *ex maleficio*, and decreed that he should make no profit by his tort, and should account to Scammon for the insurance money which he had received under a claim of ownership which was fraudulent and invalid. As was said by us in *The Commercial Union Assurance Company* case, Scammon, in obtaining this decree, " in no legal sense ratified anything done by Babcock in procuring the policy," and " was in no way bound by anything done by Babcock." And, if this be so, then there is no reasonable or plausible theory upon which the insurance covered by the Babcock policy can be regarded as " other insurance " within the meaning of the policy here in suit, or upon which an apportionment of the loss can be based. There was no error in refusing to hold the proposition of law submitted by the appellant.

Some other grounds of objection to the judgment that was entered by the Circuit Court are submitted by the briefs, but we think it unnecessary to discuss them in detail. Suffice it to say that we find in the record no substantial error for which the judgment should be reversed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*


Subsequently, upon an application for a rehearing, the following supplemental opinion was filed :

WILKIN, J. : Since filing the foregoing opinion, upon consideration of a petition on behalf of appellant for a rehearing, we have thought it proper to again examine the question as to whether the sale and conveyance by the United States Mortgage Company to Rees, and the deed to Babcock by the latter, so changed the title to the insured property as to exonerate appellant from liability under the condition in its policy against alienation ; and for that purpose this rehearing was allowed.

It is insisted that, in holding *The Commercial Union Assurance Company* v. *Scammon*, 126 Ill. 355, decisive of the foregoing question, proper regard is not paid to the distinction between clauses in policies of insurance, against a mere change of *interest*, and those which forbid any alienation, change or transfer of *title*. That there is a well defined distinction between the two classes of alienation clauses no one will deny, and it is further conceded that those against change of title are generally held to be the stronger of the two. See note to *Morrison, Adm'r,* v. *Ins. Co.*, 59 Am. Dec. 304.

The first branch of the opinion in *The Commercial Union Assurance* case undoubtedly proceeds upon the theory that the policy then in suit only prohibited a change of interest, but it was also there insisted, as it is here, that that policy forbade any change of title, and, therefore, the insurance had ceased before the loss occurred ; and so the last branch of that opinion deals with the question of change of title, and not merely change of interest.

We there distinctly held that the rule contended for by counsel for the appellant, based on the authority of Flanders on Fire Insurance, 406, and Wood on Fire Insurance, sec. 513, was inapplicable where the sale, though only voidable, was made without the consent of the owner, he continuing in possession of the insured property and asserting his title thereto until he obtained a decree of court avoiding the sale. This we can make no clearer than is done by the foregoing opinion of Justice Baker. Hence we have found it necessary, in deciding this case, to address ourselves to a reconsideration of the decision in that, and having done so, feel reassured of the correctness of the conclusion there announced.

Although the sale in question was only voidable in its inception, still, when it was set aside by the decree of a court of competent jurisdiction, at the instance of the insured, it became *void*. Bishop in his work on Contracts, sec. 611, says : " A contract is void when it is without any legal effect, voidable

when it has some effect, but is liable to be made void by one of the parties or a third person." These definitions are applicable to sales or other acts which may be void or voidable, as well as to contracts, and applied to this case, the sale and deeds to Rees and Babcock, which were voidable at the instance of Scammon, became absolutely void as to him when set aside. It becomes important then, under the contention of appellant's counsel, to determine at what date they shall be deemed to have become void, because from that time forward Scammon's title was as complete as though no sale or conveyances had been made; and it is well settled that, although he may have been temporarily divested of his title, still, if he had regained it at the time the loss occurred, there was no breach of the condition prohibiting a change of title which would defeat the insurance. *Lane* v. *Maine Fire Ins. Co.*, 12 Me. 44 (28 Am. Dec. 150).

The rule laid down by Mr. Wood, to the effect that a sale which "is merely voidable is an alienation that defeats a recovery for a loss occurring before the sale has been set aside," seems to proceed upon the theory that such a sale, as between the insurer and insured, must be deemed valid to the date of the decree declaring it void. Certainly, that theory is not correct when applied to an involuntary sale like the one here relied upon by appellant. If it is, the insurance company can take advantage of the illegal act of a third party, to avoid its liability, when the insured has been guilty of no wrong or negligence whatever. In view of the decree setting the sale aside, Scammon must be held to have acted with proper diligence in asserting his right to avoid the illegal and voidable act of the mortgage company in its attempt to deprive him of his property; and to say that, because that property was destroyed before he could succeed in obtaining his decree, therefore, appellant shall be relieved from all liability on its policy, would be unjust and unreasonable in the extreme. Suppose that sale did enable Babcock to get other insurance, and that one of the objects in inserting the clause against change of

title was to prevent the obtaining of other insurance, Scammon was in no way to blame for that result. He did all the law required him to do, to have the illegal title declared void. It was not his fault that in the meantime other insurance was obtained. Suppose the loss had occurred immediately after the sale, would it have been contended that the rule above quoted from Wood could have been invoked to defeat the insurance?

We entertain no doubt that, as between these parties, said sale and conveyances, upon the decree setting them aside, became void from the beginning, and left Scammon's title as absolute, at the time of the loss, as though no sale had been made. But, even if it could be said that the sale should be treated as a transaction to which Scammon was a party, in the nature of a voidable agreement between parties, we think the voidable title became void, as of a date prior to the loss here sued for. In Bispham's Principles of Equity, sec. 472, it is said : " A transaction which is capable of being rescinded, on the ground of fraud, is to be treated as good until rescinded, and not as bad until confirmed." The author then goes on to say : "Mr. Willish, in his argument in *Oaks* v. *Turquand,* before the House of Lords, put the following inquiry : ' When you say that an agreement is voidable and not void, and when the complainant endeavors to insist upon his right to treat it as void, is the agreement to be taken as valid until rescinded, or when rescinded, to be taken to have been void from the first ?' And this inquiry was answered by the tribunal to which it was addressed, to the effect that the agreement was to be taken as subsisting until rescinded ; but with this important qualification, that it was not to be considered as rescinded only as of the date of the decree of the court setting the transaction aside, but as of the date of the unequivocal, open declaration of the injured party, that he demanded a rescission, followed, upon refusal, by a prompt application to the courts."

Before the fire Scammon informed Babcock that his claim of title to the insured premises was illegal, and would not be recognized by him, and he also notified both Babcock and his attorney that he would take steps to set aside said title. He remained in possession of the property, in defiance of Babcock's claim of ownership, until he succeeded in obtaining a decree sustaining his claim, and overthrowing that of Babcock. The latter's title then at most became void from the time of these open and unequivocal declarations and acts of the insured. Especially is the fact that the insured remained in possession of the insured property until after the loss, claiming title thereto, an important element in the case, in determining when the voidable sale should be treated as becoming void, between the parties to this suit.

There is no view of the question under consideration consistent with reason and justice, which will permit appellant to take advantage of that illegal and unauthorized sale, to avoid liability upon its contract of insurance.

Being satisfied that all other questions raised on this record were properly disposed of on the former hearing, the judgment of the Appellate Court will again be affirmed.

*Judgment affirmed.**

---

* THE COMMERCIAL UNION ASSURANCE COMPANY

*v.*

ARIANNA E. SCAMMON.

APPEAL from the Appellate Court for the First District.

Per CURIAM: The conditions in the policy on which this action was brought are identical with those in the one sued on in *Commercial Union Assurance Co.* v. *Scammon*, 126 Ill. 355.

The substantial grounds upon which a reversal of the judgment below is urged upon this record were considered and decided adversely to the contention of counsel for appellant in the above-mentioned case, and that of *Niagara Fire Ins. Co.* v. *Arianna E. Scammon, Ex.*, in which a final opinion has been filed at the present term.

On the authority of those cases the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*